[No. 1,738.]

## DICK GERDES *v.* CHARLES MOODY ET AL.

CONSTRUCTION OF DEED.—Powell gave a power of attorney to Neleigh,
authorizing him to convey certain lots in San José, confirming by the terms
of the instrument any sales he might make. Soon after receiving the power
of attorney, Neleigh sold the property to Naglee for a fair consideration,
and conveyed it to him by his own deed, in which there is no reference to
Powell; but about a year thereafter, and while the power of attorney re-
mained in full force, Neleigh indorsed on the deed a writing to the effect
that the lots were intended to be sold to Naglee under the power of attorney,
and that he executed the deed only as the attorney for Powell, adding:
"and as such attorney I do hereby bind John W. Powell, his heirs and
assigns, to the within agreement, having received the consideration as
within specified. (Signed): ROB'T B. NELEIGH, Attorney." *Held*, that
in order to ascertain the intention of the parties, these two papers must
be construed together, and that under the circumstances they consti-
tute an attempt by Neleigh to convey to Naglee under the power of
attorney.

RELIEF FOR DEFECTIVE EXECUTION OF POWER OF ATTORNEY.—Such a
case is the ordinary one of a defective execution of a power, and a Court of
equity will afford the appropriate relief.

IDEM—WHEN INVOKED.—It is only when there has been an unsuccessful
attempt to execute a power in proper form that the interposition of a Court
of equity is properly invoked.

Argument for Appellants.

Equities of Occupant without Legal Title.—Neither the fact that the party in possession first entered as an intruder without title, and subsequently obtained from Naglee all his title to the premises, nor the fact that Naglee reconveyed one of the lots to Neleigh soon after the making of the second writing, would impair the equities of the party in possession.

Statute of Limitations Bar to Equitable Defense.—In an action by the vendor of lands holding the naked legal title against his vendee to recover the possession, the vendee having paid the purchase money and being rightfully in possession under his contract of purchase, the statute of limitations is not a bar to the equitable defense of the vendee and to his right to affirmative relief.

Appeal from the District Court of the Third Judicial District, Santa Clara County.

The facts are stated in the opinion of the Court.

*S. O. Houghton,* for Appellants.

1. In equity Powell is bound by the contract of sale made by his duly authorized agent. The instrument attached to the deed made by Neleigh to Naglee declares fully the intention of the agent to bind his principal; and the fact that that instrument is not signed with the name of the principal by the agent, does not make the instrument inoperative. It was an attempt to execute the power, but it was defectively executed. While equity will not compel the execution of a power of this character, it will relieve in the case of a defective execution of it in favor of a purchaser for a valuable consideration. (Willard's Eq. Juris. 83; *Salmon* v. *Hoffman,* 2 Cal. 142; *Beatty* v. *Clark,* 20 Cal. 35; Story's Eq. Juris., Vol. 1, Secs. 169, 170; *Love* v. *The Sierra Nevada Water and Mining Co.,* 32 Cal. 652.)

Neleigh, at the time he executed the second instrument, was still the attorney in fact of Powell, and yet had power to bind him, for there is no proof that his power ever was revoked; and if he had the power to bind Powell in the first instrument, but failed to do it through ignorance or by mistake, he could yet remedy the defect.

A power over a legal estate defectively executed at first may be executed over again, and the last execution shall stand, the first being a nullity. (*Hervey* v. *Hervey*, Bernadiston's Chan. R. 111.)

The testimony of Neleigh shows that the lots in question were really the property of Neleigh, and when he made the deed to Naglee he may have acted upon the belief that his own deed would pass the legal title; but, subsequently, it is evident he learned that such was not its effect, and to remedy the defect he executed the second instrument. Neleigh testifies that he applied for the grant of these lots, and that he paid for them with his own money—fourteen dollars each.

2. In a contract for the sale of real estate, when the consideration is paid and the purchaser goes into possession, the vendor holds the legal title in trust for the vendee. The trust which arises from such a transaction is a presumptive or resulting trust. (*Taft* v. *Stephenson*, 7 Hare, 1; *Green* v. *Smith*, 1 Atk. 572.)

The general rule in relation to the enforcement of trusts is, that so long as the trust subsists or is recognized, no lapse of time will bar the beneficiary from asserting his rights to the trust property as against the trustee, whether the trust be express or implied. But it is conceived that the principle upon which the statute of limitations is set in motion in all cases of trusts is the same—that is to say, it begins to run from the time that the claims of the *cestui que trust* and the trustee become adverse. It has been stated in some cases in general terms, that as between the trustee and *cestui que trust* an express trust will not be barred by any length of time. That rule, however, is subject to the qualification that the relation of trustee and *cestui que trust* still subsists. (*Cholmondeley* v. *Clinton*, 2 Merivale, 360; *Wedderburn* v. *Wedderburn*, 4 Mylne & C. 53.) The statute begins to run

from the open disavowal of the trust and what amounts to an adverse possession by the trustee. (*Kane* v. *Bloodgood*, 7 John Ch. R.; *Oliver* v. *Piatt*, 3 How. S. C. R. 411.) In this respect, express and resulting trusts stand substantially upon the same footing. The general rule is,.that after the sale of land, and before a conveyance of the legal title, the vendor is the trustee of the vendee, and the Act of limitations will have no operation. (*Piper et al.* v. *Lodge*, 4 Serg. & R. 310.) Whenever the legal title is in one person and the real interest in another, they form but one title, and the statute of limitations does not run between the holders of such title until the trustee disclaims and acts adversely to the *cestui que trust*. (*Rush* v. *Barr*, 1 Watts, Penn. 110; *Lyon* v. *Marclay*, 1 Watts, Penn. 271; *Murdock* v. *Hughes*, 7 S. & M. 219; *Wesner* v. *Barnett*, 4 Wash. C. C. 631; 2 Story's Eq. Juris., Sec. 1,520.)

The general rule seems to be, that the time when the trustee disavows the trust or sets up a claim adverse to the *cestui que trust* is the *terminus a quo*—the statute of limitations begins to run.

The appellants have been in the actual possession of the premises for many years, and have made extensive and valuable improvements thereon, without any claim having ever been set up by Powell adverse to them, although he lived in and about San José until 1854—was a policeman there; and in 1865 was informed by a lawyer that the lots were granted in his name.

It does not appear, then, that Powell ever disavowed the trust or denied the right of appellants to the property, or that he ever did any act which placed him in a position adverse to the right claimed by appellants until he executed the deed to respondent, even if that act, under the circumstances, could be so considered. Under these circumstances he must be considered as recognizing the trust as still subsisting, at least until he made the deed to respondent, for a disavowal

must be by positive acts, and not by mere silence. If, then, our view is correct, that the statute did not commence to run so long as the trust was a recognized and subsisting one, it certainly did not begin to run before appellants filed their bill against Powell for a specific performance, August 7th, 1866, which was a few days before the deed was made to respondent, if the filing of that complaint be deemed a sufficient demand, which it doubtless was according to the rules of practice of Courts of Chancery. (*Bruce* v. *Tilson*, 25 N. Y. 203; *Grey* v. *Dougherty*, 25 Cal. 282; *Jones* v. *City of Petaluma*, 36 Cal. 233.)

Powell answered in that action, and denied the right of the plaintiffs therein to a specific performance; and Gerdes, the respondent, filed his petition to intervene therein, after he obtained the deed from Powell, and demanded judgment against plaintiffs for the possession of the premises. That action was subsequently dismissed by plaintiffs, as doubts were entertained whether such an action could be maintained under our code without a demand for and a refusal to execute a deed before suit brought, where there had been no act done by the trustee amounting to a disavowal of the trust.

If either the institution of that action, or the denial of the trust by the answer filed therein, or the execution of the deed by Powell to Gerdes, first set the statute in motion, the right of appellants to compel a specific performance was not barred by lapse of time when this action was commenced, as less than two months had passed after the happening of either of those events. Lapse of time will not bar an action by the vendee for a specific performance of a contract of sale where there has been no adverse possession by the vendor. (Tiffany & Bullard on Trusts and Trustees, 720; Hill on Trustees, 268; *Grey* v. *Dougherty*, 25 Cal. 279; *Bruce* v. *Tilson*, 25 N. Y. 202; *Dodge* v. *Clarke*, 17 Cal. 588; *Miller* v. *Beor*, 3 Paige, 467; *Barbour* v. *Whitlock*, 4 Monroe, 197.)

*A. J. Moultrie,* and *William Matthews,* for Respondent.

The position of appellants, that there was a defective execution of a power to sell, is unsupported by any averment in the cross complaint, or any testimony in the record. The averment in the cross complaint is, that on the 27th of December, 1847, Neleigh, " being thereunto duly authorized and empowered by John W. Powell, and acting for him and in his behalf, sold the said lots to Henry M. Naglee." This is an averment of a valid, not an invalid, execution of a power; and to support it the defendants offered upon the trial an instrument, appearing to be a deed or conveyance, in which " Robert B. Neleigh " is the grantor, and purporting to convey " Neleigh's right, title, and interest " in the lots described in the pleadings to " Henry M. Naglee." Powell's name is not mentioned in the instrument, and no reference, however remote, is made to any power from him to Neleigh. This deed bears date on the 27th of December, 1847. Three hundred and sixty-three days afterwards Mr. Neleigh writes upon the record, underneath his deed, to Naglee that he " acknowledges," and states " that the foregoing deed was executed by him as the attorney of John W. Powell, and that thereby binds John W. Powell, his heirs and assigns, to the within agreement;" and he signs it, " In witness whereof, I have hereunto set my hand and seal.  ROBERT B. NELEIGH, Attorney." So far as Neleigh, in this instrument, attempts to " bind " Powell by any agreement, his act was void. The letter of his authority limited his power to the making of the deeds and conveyances. He was not empowered to make any contracts or agreements for Powell.

But we submit that this instrument is nothing more than the legal opinion of Mr. Neleigh, as to the effect of his own deed, the value of which is somewhat diminished by the fact that four days after the making of this last instrument,

viz: on the 26th of December, 1848, Naglee, in considera-
tion of the sum of one dollar, reconveyed one of the lots to
Neleigh. Courts of equity never aid the non-execution of
a power. (1 Story's Eq. Jur., Sec. 169; *Tollet* v. *Tollet*, 2
P. W. 490.)

But independent of these considerations, the defendants
do not stand in the position of parties in whose favor Courts
of equity will reform a deed defectively executed. Such
reformation will be directed only upon a valuable and meri-
torious consideration. (1 Story's Eq. Sec. 169; *Beatie* v.
*Clark*, 20 Cal. 13.) The defendants do not so stand in Court.
With the record evidence of Powell's rights before them,
they have succeeded to Ransom G. Moody, who entered
upon the premises without pretense of title; and they stand
in the shoes of Robert B. Neleigh, who declares that he has
attempted to convey the lands of his constituent, and four
days thereafter receives from the person to whom he con-
veys, for the nominal consideration of one dollar, one half
of his constituent's estate. No such transaction as this was,
we submit, ever aided by a Court of equity. Nor does the
circumstance that Powell was ignorant of his title to these
lots, until Mr. Ryland informed him of the fact in 1865,
assist the defendants. The ignorance of his rights was pro-
duced by the false statement of Neleigh, that his four lots
were situate in block four and range four. A statement
which the circumstances of the case would lead to the sus-
picion was deliberately untrue.

The consent of Powell that Neleigh might use his name
in acquiring lots for Neleigh's benefit—the granting officer
being ignorant of this private arrangement—created neither
an express or implied trust in Neleigh's favor, or constituted
an agreement which a Court will enforce. (Hill on Trustees,
Note 3, marginal, 93; *Leggett* v. *Dubois*, 5 Paige, 114; *Hub-
bard* v. *Goodwin*, 3 Leigh, 514; *Fuller* v. *Dake*, 18 Pick. 481;
*Marshall* v. *Balt. & O. R. R. Co.*, 16 How. 334; *Cooth* v.

*Jackson,* 6 Ves. 31; Chitty on Contracts, marginal, 580, *et seq.*; 1 Story Eq. Juris. Sec. 294.)

No trust resulted by the payment of the fees incident to the grant of the lot. (*Noe* v. *Card,* 14 Cal. 607; *Scott* v. *Ward,* 13 Cal. 458; *Donner* v. *Palmer,* 31 Cal. 500; *Hood* v. *Hamilton,* 33 Cal. 703; 2 Story Eq. Juris. 1,201 *a.*)

Trusts arising by implication of law are barred after the lapse of four years. (*Kane* v. *Bloodgood,* 7 Johns. Ch. 89; *Elmerdorf* v. *Taylor,* 10 Wheat.; *Furnam* v. *Brooks,* 9 Pick.; Angel & Ames on Lim., Ch. 55; *Cunningham* v. *Hawkins,* 24 Cal. 410.

In the present case, the right to file a bill to reform the defective execution of the power by Neleigh existed, if at all, in Naglee, on the 17th of April, 1850, when the statute of limitations was passed.

The cause of action, therefore, became barred on the 18th of April, 1854. The defendants in this case did not connect themselves, in any manner, with the supposed rights of Naglee, until the 3d of September, 1858. Eight years and four months had thus passed, more than double the period, upon the lapse of which the action became barred.

By the Court, CROCKETT, J.:

This is an action in the usual form, to recover the possession of two lots in the City of San José. Among other defenses the answer avers, in substance, that in July, 1847, at the request of one Neleigh, the Alcalde of San José granted and conveyed the lots to one Powell; that the purchase money therefor was paid by Neleigh, and was never refunded by Powell; that Powell never applied for the grant; that soon after the grant was made Neleigh entered into possession, and erected a house thereon, which he occupied with his family; that in October, 1847, Powell executed and delivered to Neleigh a power of attorney, whereby he

authorized the latter to sell and convey the lots for such price and to such person as he should deem meet; that in December, 1847, Neleigh, whilst in possession, "and being thereunto duly authorized and empowered by the said Powell, and acting for him and on his behalf, sold the said lots to Henry M. Naglee for the price or sum of forty dollars, which was at the time the full value thereof;" that Naglee paid the said sum to Neleigh, and the defendants, by proper mesne conveyances and for a valuable consideration, have succeeded to all the rights of Naglee in the premises; that by virtue of the rights so acquired, the defendants entered into possession, and for more than eight years past have been and yet are in possession; that relying on the belief that Powell would fulfill and perform said contract of sale, and convey said premises to them, the defendants have erected thereon valuable improvements, consisting of a steam flouring mill, sawmill, brick warehouse, etc., of the value of fifteen thousand dollars; that in August, 1866, while the defendants were so in possession, Powell conveyed said premises by quitclaim deed to the plaintiff, for the consideration of three hundred dollars, then paid in cash, and the further sum of five hundred dollars, to be thereafter paid, in the event that the plaintiff recovered the property; that the plaintiff purchased with full and actual notice of the defendants' equities; that in September, 1866, the defendants demanded of Powell a proper conveyance of the premises, which he refused to make; that the plaintiff has no other title than that derived from the deed from Powell.

As a separate defense, the answer sets up the statute of limitations, and prays, as affirmative relief, that the defendants be adjudged to be the owners of the property, and that the plaintiff release to them the legal title. To this new matter an answer was filed by the plaintiff, which denies all the material allegations of the defendants in that behalf.

The equitable defense thus set up in the answer was first

tried, and after hearing the evidence, the Court finds, in substance, that Powell and Neleigh came together across the Plains to California in 1846; that while Powell was working at San Francisco, Neleigh obtained his permission to use his name in procuring a grant to town lots in San José from the Alcalde for Neleigh's use and benefit, on the pretext that Neleigh had already obtained a grant for four lots in his own name, and the law permitted only four lots to be granted to one person; that Neleigh, in fact, had no grant of lots at that time in San José; but there was, in 1847, a regulation of the Ayuntamiento of San José which fixed the size of lots to be granted at fifty varas square, and prescribed that not more than four lots should be granted to any one person; that this regulation, however, was not observed by the Alcalde, because it appears from the records of the Alcalde that on the 16th of July, 1847, four lots were granted to Neleigh, and on the 20th of July, 1847, four other lots were also granted to him; that on the 16th of July, 1847, four lots were granted to Powell, and in the year 1848 five other lots were granted to him; that after Powell had consented to the use of his name by Neleigh, for obtaining a grant for the benefit of the latter, Neleigh solicited the Alcalde for a grant of four lots to himself and of four lots to Powell; and on the 16th of July, 1847, the Alcalde granted four lots to Neleigh and four to Powell, for all of which Neleigh paid the municipal fees; that the lots in controversy are two of those which were thus granted to Powell; that in October, 1847, Powell executed and delivered to Neleigh a power of attorney, authorizing him for Powell, and in his name, "to make and execute, sign, seal, and deliver any and all deeds or other instruments of writing which may be necessary to convey and assure title to any and all my real and personal estate in said Pueblo San José, for the absolute disposal thereof or any part of it;" that in December, 1847, Neleigh sold the lots in controversy to Naglee for forty dollars, which

was a fair price for them; that Naglee paid the purchase money to Neleigh, and thereupon Neleigh, in his own name, and not in the name of Powell, made, executed, and delivered to Naglee his deed of bargain and sale for the lots, whereby he, for himself, conveyed to Naglee "all his right, title, and interest in and to said lots;" that afterwards Neleigh made and delivered to Naglee an instrument in writing, indorsed on said deed in the following words:

"In connection with the foregoing, I, the undersigned, Robert B. Neleigh, attorney for John W. Powell, this 25th day of December, 1848, in the Pueblo de San José, hereby acknowledge and state that the lots, seven and eight, deeded by the Alcalde to John W. Powell, and which lots were sold by —— to Henry M. Naglee, under a power of attorney of said Powell, which power is recorded, and as such attorney only was the above deed executed; and as such attorney, I do hereby bind John W. Powell, his heirs and assigns, to the within agreement, having received the consideration as within specified.

"In witness whereof, I have hereunto set my hand and seal.
    (Signed:)        "ROBERT B. NELEIGH, Attorney."

That neither Neleigh, nor Naglee, nor any one claiming under them, or either of them, occupied or improved said lots, but the lots remained open and uninclosed until 1856, when the father of defendants entered into possession, without right or title, and erected a mill on one of the lots; that he remained in possession a few years, when he delivered the exclusive possession to his sons, Charles and David B. Moody, and on 3d September, 1858, he and his said two sons acquired, by mesne conveyances from Naglee, all the right, title, and interest of Naglee in the premises, for the sum of seven hundred and fifty dollars, which was a fair

price; that in 1859 the other defendant, Volney D. Moody, acquired an interest under one of the other defendants, and the defendants have been continuously in possession from the time of their entry, during which period they have erected valuable improvements on the premises, worth from eight to fifteen thousand dollars, and at the commencement of this action they were, and yet are, in possession, claiming title under Naglee adversely to the plaintiff; that in 1866 the defendants commenced an action against Powell, to quiet title to said premises, which action was pending when the plaintiff purchased from Powell, and he had full notice of it at the time of his purchase; that Powell never had the grant in his possession, but it was recorded in the Alcalde's book of grants; that Powell did not know until 1865 that the lots had been granted to him; and when the plaintiff applied to him to purchase, he refused to make any other conveyance than a release of whatever right, title, or interest he might have in them; that in August, 1866, Powell sold the lots to the plaintiff for eight hundred dollars, of which three hundred dollars was paid in cash, and the balance was to be paid when the plaintiff recovered the lots.

As conclusions of law, the Court finds:

First—That the plaintiff does not hold the legal title in trust for the defendants, because, first, a resulting trust in favor of Neleigh did not arise at the time of the grant to Powell, by reason of the previous consent of Powell to take a grant for Neleigh's benefit; second, the grant is a gift, and not a purchase.

Second—That the plaintiff cannot, in equity, be compelled to convey the legal title to the defendants, on the ground of perfecting a supposed parol contract for the purchase of the premises, between Naglee and Neleigh, or his principal, because:

1st. There was no parol contract between them in relation to the land under which Naglee paid the purchase money,

and entered into the lands, and made improvements on them; and without possession taken and maintained, under such contract, there can be no pretense of part performance.

2d. The purchase by Naglee was fully performed by the payment of the purchase money by him, and the execution and delivery of a deed of bargain and sale by Neleigh.

3d. The deed was ineffectual to pass the title of Powell to Naglee.

4th. The defendants did not enter under any parol contract with Powell, or Neleigh, as his agent, on the faith of which they made improvements. They took possesssion under their father, and, being in possession, they acquired whatever title Naglee had; but as Naglee had neither title nor possession under any contract with the owner, they did not acquire from him, or by their own possession, any equity which can be enforced against the legal title of the plaintiff.

Third—But if any equities did arise in favor of Naglee, or the defendants claiming under him, out of the transaction between Naglee and Neleigh, the same have become barred by the statute of limitations.

The Court thereupon entered judgment against the defendants on their equitable defense; and after a motion for a new trial, which was denied, the defendants have appealed.

We have stated thus minutely the pretensions of the parties and the findings of the Court, because, in our opinion, if it be assumed that all the facts are correctly embodied in the findings, the Court erred in the conclusions of law which it deduced from the facts found.

It is found as a fact that Powell made a power of attorney to Neleigh, whereby he authorized him "to make, execute, sign, seal, and deliver any and all deeds or other instruments of writing which may be necessary to convey and assure title to any and all my real and personal estate in said Pueblo San José, for the absolute disposal thereof, or any part of it." It also appears from the power itself, a copy of

which was put in evidence, that it contained an additional clause, as follows: "Hereby ratifying and confirming all such deeds, conveyances, *sales*, etc., which shall at any time hereafter be made by my said attorney touching or concerning the premises." It further appears that very shortly after the execution and delivery of the power of attorney, Neleigh sold the lots to Naglee for a full, fair price, and conveyed them to him by his own deed, in which no reference is made to Powell; but about one year thereafter, and while the power of attorney remained in full force, he indorsed on the deed a writing to the effect that the lots were intended to be sold to Naglee under the power of attorney, and that he executed the deed only as the attorney for Powell; "and as such attorney I do hereby bind John W. Powell, his heirs and assigns, to the within agreement, having received the consideration as within specified." Signed: "ROBERT B. NELEIGH, Attorney."

In order to ascertain the intention of the parties, these two papers must be construed together; and when thus considered, and in view of the surrounding circumstances, it is obvious that however inartificially the papers were worded, the two, taken together, constitute an attempt by Neleigh to make a conveyance to Naglee under the power of attorney. It is but the ordinary case of the defective execution of a power, and in such cases Courts of equity always afford the appropriate relief. In arriving at the intention of the parties in making these instruments, we interpret them, as all other writings ought to be interpreted, in the light of the surrounding circumstances. In view of the fact that Powell claimed no interest in these lots, and held only the naked legal title for the benefit of Neleigh, who had a power of attorney from Powell, authorizing him to convey them, it would not be a forced or unnatural interpretation of the transaction to hold, that, by his own deed to Naglee, Neleigh intended to convey his own supposed interest in the lots, and

by the subsequent writing, indorsed on the deed, to release the legal title held by Powell. It may be that the writing is so unskillfully drawn as not to have that effect; but if it was operative in law to convey the title, it would not need the aid of a Court of equity to give it vitality. It is only when there has been an unsuccessful *attempt* to execute a power in proper form that the interposition of the Court is properly invoked. We are satisfied that this is a case of that character. (*Beatty* v. *Clark*, 20 Cal. 35; *Love* v. *Sierra Nevada L. W. & M. Co.*, 32 Cal. 654; Story's Eq., Secs. 169, 170; *Barr* v. *Hatch*, 3 Ham. 529.)

But it is urged that the defendants do not occupy such a position as entitles them to demand the interposition of a Court of equity, because, as it is said, they originally entered under their father, who was a mere intruder, without title; and because Neleigh, under whom they claim, very soon after the conveyance to Naglee, took back from him a conveyance of one of the lots for a nominal consideration. This latter fact does not appear in the findings; but if it did, neither that nor the other fact relied upon could impair the defendants' equities. When they succeeded to Naglee's rights, they became entitled to enforce them as he might have done, without reference to the manner in which they had acquired the possession; and if Neleigh practiced any fraud on Powell in taking the conveyance from Naglee, there is no proof that the defendants were privy to it or had notice of it. But the fact that Naglee reconveyed one of the lots to Neleigh, under the facts proved, does not establish or tend to establish any fraud in Neleigh.

The only point remaining to be considered is whether or not the defendants' right of action is barred by the statute of limitations. We are satisfied it is not. After the sale and attempted conveyance to Naglee, Powell held the legal title in trust for Naglee and his assigns; and the defendants' cause of action did not accrue, in a legal sense, until after a

refusal by Powell or the plaintiff, his vendee, to convey the title. There is no proof of any refusal by Powell until after he conveyed to the plaintiff in 1866, and the only proof that the plaintiff refuses is the fact that he denies the defendants' right to a conveyance in the pleadings in this cause.

Our conclusion is that the defendants were entitled to a judgment, as prayed for, on the findings.

The judgment is therefore reversed and the cause remanded, with an order to the District Court to enter judgment on the findings for the defendants, with the relief which they demand in their answer.

[The foregoing opinion was delivered at the January Term, 1869; and after a reargument of the question, as to the operation of the statute of limitations, the following opinion was given at the April Term, 1871.—REPORTER].

By the Court, CROCKETT, J.:

In this case a reargument was ordered of the question arising under the statute of limitations; and since the reargument we have had occasion, in the case of *Love* v. *Watkins*, decided at the last January Term, to consider carefully whether in an action by the vendor of lands, holding the naked legal title, against his vendee to recover the possession, the vendee having paid the purchase money, and being rightfully in possession under his contract of purchase, the statute of limitation is a bar to the equitable defense of the vendee, and to his right to affirmative relief. We decided this proposition in the negative, and held that the rights of the defendant in such a case were not barred by the statute. The present case comes fully within that decision, which we are satisfied is a correct exposition of the law. The opinion heretofore delivered in this case will, therefore, stand as the opinion of the Court, except in so far

as that portion thereof which relates to the statute of limitations is inconsistent with the decision in *Love* v. *Watkins* and with this opinion; and on that branch of the case we adopt the views expressed herein and in *Love* v. *Watkins*, in lieu of those contained in the original opinion.

Judgment reversed, and cause remanded, with an order to the Court below to enter a judgment for the defendants on the findings, with the relief demanded in their answer.