[Sac. No. 777.    Department Two. — November 5, 1901.]

## THOMAS BROWN, Respondent, v. SAN FRANCISCO SAVINGS UNION, Appellant.

CONTRACTS — NUDUM PACTUM — OPTION TO PURCHASE LAND — PROPOSAL NOT ACCEPTED — WITHDRAWAL. — An option given to a real estate agent proposing to sell lands, but wishing himself to purchase the same, to buy within a time limited, upon certain terms and conditions, of which no notice of acceptance was given, and for which no consideration was paid, and which he is free to exercise or not, is a mere *nudum pactum,* and amounts only to a continuing proposal, which may be withdrawn by the party making it before such notice of acceptance is communicated; and after notice of such withdrawal the option cannot be exercised.

APPEAL from a judgment of the Superior Court of Glenn County and from an order denying a new trial. Oval Pirkey, Judge.

The facts are stated in the opinion of the court.

Henry C. Campbell, and Donald Y. Campbell, for Appellant.

A proposition in writing to sell land at a certain price, within a given time, is a continuing offer, which may be retracted at any time before acceptance, in the absence of consideration for the offer. (*Wristen* v. *Bowles,* 82 Cal. 84; *Connor* v. *Rennecker,* 25 S. C. 514; *Boston and Maine R. R. Co.* v.

*Bartlett*, 3 Cush. 224; *Burnet* v. *Biscoe*, 4 Johns. 235; *Tucker* v. *Woods*, 12 Johns. 189; *Weaver* v. *Burr*, 31 W. Va. 736; *Ide* v. *Leiser*, 10 Mont. 5;[1] *Coleman* v. *Applegarth*, 68 Md. 21;[2] *Gordon* v. *Darnell*, 5 Col. 302; *Bean* v. *Burbank*, 16 Me. 458;[3] *McDonald* v. *Bewick*, 51 Mich. 79; *Perkins* v. *Hadsell*, 50 Ill. 216; *Litz* v. *Goosling*, 93 Ky. 185.)

Frank Freeman, Charles L. Donohoe, and B. F. Geis, for Respondent.

A proposer may bind himself to keep open a proposal until a specified date, so that an acceptance at any time within that date will be good. The entertaining of the offer involves a suspension of inquiry in other quarters, which is a sufficient consideration. (1 Wharton on Contracts, sec. 12; *Weaver* v. *Burr*, 31 W. Va. 736.)

HENSHAW, J.— Plaintiff prosecuted this action to obtain damages from defendant for its alleged breach of an option to sell land. Judgment passed for plaintiff, and from that judgment and from the order denying defendant's motion for a new trial defendant appealed. The following facts disclose the transaction between the parties: Defendant was the owner of certain land in Glenn County, known as the "Graves place." Upon March 27, 1896, plaintiff wrote to defendant, stating that a good many people were in the neighborhood, looking for land, and asking the price and terms upon which defendant would sell the land in question. To this letter defendant made reply, upon March 30th, stating the selling price—$7,400—and the terms of payment, adding that parts of the land were under lease, but that no difficulty was anticipated, in the event of a sale, in securing a surrender of the leases or attornment of the tenants. In reply to this, upon April 16th, plaintiff wrote more specifically, that he had some Danish people looking at the land with the intent to purchase, and concluded that if he obtained an option upon the tract for six months he believed he could dispose of it. Upon the following day, the defendant corporation wrote that if it were to give an option it could not extend beyond the end of September, 1896, and if the right of purchase was exercised it would expect interest upon the pur-

[1] 24 Am. St. Rep. 17.          [3] 33 Am. Dec. 681.
[2] 6 Am. St. Rep. 417.

chase price from the date of the option.  It further explained as to one of the tenants, that if he should fallow his land and not be allowed to seed it, the bank would expect the holder of the option to compensate him for his labor in the event that the option was exercised.  Upon April 19th, Brown wrote in acknowledgment of this last letter, reciting the conditions therein set forth, declaring that he regarded them as right and proper, and adding that he was satisfied that he could make a sale of the property within the time named if the bank would give him a contract up to that time.  He then proceeds to explain that he has other prospective purchasers besides the Danish people, and that his object in making the sale is not to secure a profit for himself therefrom, but to dispose, at the same time, of other contiguous lands, of which he is owner. Upon April 21st the corporation replied that a formal contract was unnecessary, and that Brown might hold its letter of the 17th as a contract between them, whereby he was privileged to purchase the lands upon the terms and conditions therein mentioned.  Upon May 11th, following, the bank wrote that it had discovered that Mr. Harrington had an earlier contract with them for the purchase of the lands, which was in full force and effect; that he had exercised his right of purchase, and that naught remained for it to do but to carry out its part, and added that Brown was thus advised early in order that he might suspend operations, if any were in progress. Upon May 13th, plaintiff replied to this letter, saying, "I have done considerable work toward effecting a sale of the above property, and some of it, I am sorry to say, cannot be undone, providing parties live up to the contract between them and myself, which I executed in good faith, and on the strength of your option to me for a certain consideration. . . . Now, if parties who I have contracted with come forward and pay their money, I cannot see how I am to get out of it.  As to suspending operations, I am sorry, but that cannot be done. . . . I would like to be able to say all right, but, under the circumstances, I cannot see any legitimate way out of it for me, only to run the chances of the parties not living up to contract during life of your option to me."

Nothing further passed between the parties until the twenty-fifth day of September, a few days before the expiration of the time fixed in the option, when Brown wrote: "In April, 1896, we entered into a contract, whereby I was given an option un-

til September 30, 1896, to sell 680 acres of land in Glenn County, known as the 'Fremont A. Graves tract,' belonging to you. I now notify you that I will take the land upon the conditions mentioned in the contract. You can either forward the deed to the Bank of Orland or Bank of Willows," etc. To this the bank promptly replied, upon September 28th, reviewing the sale to Harrington, and the fact that Brown was advised of this upon the 11th of May, and that the option was then recalled, and concluding, "Under these circumstances, we do not think we can be liable to you for anything more than compensation for the time you may have given the matter of selling these lands in the twenty days between the two dates named. We shall not demur to paying you a reasonable sum for the time lost. Please state what you think will be fair compensation." To this, upon the 10th of October, Brown made reply, that he wished nothing but what was fair and reasonable, and that the figure which he was about to name "must be particularly understood as a compromise figure," and then stated that if defendant would pay him the sum of five thousand dollars, such sum would partially repay him for the damages he had sustained. The acceptance of this "compromise figure" was declined by the corporation, and this action followed.

The contract between the parties is that established by the letters, the essential parts of which are as above set forth. It is plain that the defendant believed, and indeed the letters permit no other interpretation, that plaintiff, acting as a real estate agent or broker, had prospective purchasers of the land in view, and sought an option from defendant to enable him to sell. Upon the trial it is shown that these pretenses are disingenuous and false, and this is shown from the lips of plaintiff himself, who declares that from the first his idea was to buy the land for himself. Reading the contract, then, in the light most favorable to plaintiff, as explained by his testimony,— that is to say, that he was not a broker for the sale of the land, but was himself the intending purchaser,—the writings amount to this: that the bank, April 21st, gave an option to plaintiff to purchase the land, subject to certain expressed terms and conditions, which option he was entitled to exercise at any time before the last day of September of that year. Upon the twelfth or thirteenth day of the May following, while this option had been in force but some twenty days, the bank, for reasons stated, withdrew and rescinded it. By the terms of the option, plain-

tiff bound himself to nothing; he was free to act under it or not, as he saw fit.   Up to the time of its withdrawal he had given no notice whatever of his acceptance of it.   No consideration passed from plaintiff to defendant when the option was tendered.   Admittedly, plaintiff paid nothing for the option, and his statements contained in his letter of May 13th, to the effect that he had done considerable work toward effecting a sale of the property, which he is sorry to say cannot be undone, providing the parties live up to the contract between them and him, are representations, by his own evidence, admittedly false. Even were they true, as no acceptance of the offer had been made known to defendant, defendant would still have had the right to withdraw it, and it was months after the withdrawal was known to plaintiff that he came forward to exercise the option, which, as he correctly states, had been given him "to sell the land," and then, upon the trial, for the first time, it is made to appear that he had from the first intended to purchase it. The option of the defendant was a mere continuing proposal, which it had the absolute right to withdraw before acceptance had been communicated to it.   No such acceptance ever was announced until months after the withdrawal.   Up to the time of acceptance, a contract such as this, where no consideration has been parted with, no binding obligation of any kind entered into, is mere *nudum pactum.*   The authorities on this point are so numerous, the law upon it so well settled, that it is almost supererogation to refer to them.   In instance, however, may be cited, *Wristen* v. *Bowles*, 82 Cal. 84; *Litz* v. *Goosling*, 93 Ky. 185; *Weaver* v. *Burr*, 31 W. Va. 736; *Gordon* v. *Darnell*, 5 Col. 302; *Coleman* v. *Applegarth*, 68 Md. 21;[1] *Connor* v. *Rennecker*, 25 S. C. 514; *Boston and Maine R. R. Co.* v. *Bartlett*, 3 Cush. 224; *Ide* v. *Leiser*, 10 Mont. 5.[2]

For the foregoing reasons the judgment and order are reversed and the cause remanded.

Temple, J., and McFarland, J., concurred.

---

[1] 6 Am. St. Rep. 417.          [2] 24 Am. St. Rep. 17.