[Civ. No. 454.   Third Appellate District.—June 23, 1908.]

## CHARLES A. MITCHEL and GEORGE G. SKILLEN, Appellants, v. GEORGE V. GRAY, Respondent.

ORDER DENYING NEW TRIAL—APPEAL—CLERICAL MISPRISION IN NO-
TICE.—A clerical misprision in the notice of appeal from an order
denying a new trial, in specifying the wrong month and year in the
date of the order, where there is no doubt of the intention to ap-
peal from the only order made, denying a new trial, will not pre-
clude a consideration of the appeal.

ACTION TO RESCIND SALE OF MINE—PRIOR CONTRACTS BETWEEN PLAIN-
TIFFS—AGENCY—TERMINATION—SUPPORT OF FINDINGS AND JUDG-
MENT.—In an action to rescind a sale of a mine by the plaintiff
owner and a coplaintiff, with whom the owner had made two prior
contracts, which, construed together, constituted a mere agency of
such coplaintiff, for the plaintiff owner to sell the mine within a
limited time, without consideration, and coupled with no interest
other than a prospective commission upon a completed sale, if ob-
tained by him, which agency was revocable at any time before a
completed sale was obtained, and was terminated by the owner by no-
tice, before making the sale by himself to the defendant, findings
and judgment for the defendant based upon such facts must be
sustained.

ID.—OPTION TO PURCHASE WITHOUT CONSIDERATION.—An option to pur-
chase real estate within a time limited, which is wholly without
consideration, is a mere *nudum pactum,* and may be withdrawn at
any time before acceptance.

ID.—SUIT IN EQUITY—FINDINGS OF JURY ADVISORY—POWER OF COURT.
In a suit in equity the special findings of a jury are merely ad-
visory to the court, which is at liberty to disregard them and make
findings to the contrary, if there is evidence tending to support
the findings of the court.

APPEAL from a judgment of the Superior Court of Sis-
kiyou County, and from an order denying a new trial.   J. S.
Beard, Judge.

The facts are stated in the opinion of the court.

Gillis & Tapscott, James F. Farraher, and James D. Fair-
child, for Appellants.

R. S. Taylor, for Respondent.

HART, J.—The plaintiffs brought this suit for the purpose of rescinding a certain contract by which the defendant bought from the appellant, Skillen, a mine known as the "Lanky Bob Quartz Mine," situated in Siskiyou county.

The court, as advisory to it upon the questions of fact, called to its aid a jury, to which, upon the conclusion of the adduction of evidence and the arguments, it submitted some forty special questions of fact, covering all the material points brought out by the evidence addressed to the principal issue tendered by the pleadings. To some of these questions the jury made affirmative answers and to the others negative. The court adopted a number of the answers and rejected the others, and made findings of its own in favor of the defendant. A decree was accordingly entered, and this appeal is by the plaintiffs from the judgment and the order denying plaintiffs a new trial.

1. Objection is urged by respondent against a consideration of the appeal from the order, because, as claimed, it does not appear from the record that an appeal from the order has been taken. The notice of appeal from the order, as it appears in the transcript, stated that "the plaintiffs above named do hereby appeal to the Supreme Court . . . from an order made and entered in the above-entitled cause in said above-entitled court on the 26th day of June, 1906, refusing and denying plaintiffs' motion for a new trial herein and from the whole of said order." The minutes of the court, as presented in the transcript, show that the judgment was entered on the ninth day of June, 1906, and that on June 13, 1906, a notice of motion for a new trial was served and filed; that on January 26, 1907, the motion for a new trial was heard and denied by the court; that on March 26, 1907, notice of appeal from an order "made and entered on the twenty-sixth day of June, 1906," denying a new trial was served and filed.

There can be no doubt that the appeal from the order was intended to be from the order made on the twenty-sixth day of January, 1907, and that the statement in the notice of appeal that the appeal is from the order "made and entered on the twenty-sixth day of June, 1906," is a clerical misprision. In fact, it is so clear that it is beyond dispute that the insertion of the word "June" in place of "Janu-

ary" and the figure "6" instead of "7," in designating the year in the notice of appeal, was due wholly to a clerical mistake, or to what may properly be termed "absent-mindedness" on the part of the party writing the notice.

2. The contention of the appellants is, and the complaint alleges that, on the twenty-first day of July, 1905, plaintiff Skillen, in writing, agreed to sell to plaintiff, Mitchel, and that the latter in said writing agreed to purchase from the former, the said "Lanky Bob" quartz mine, and that before the expiration of the time within which said sale was, by the terms of said agreement, to be consummated, the defendant, Gray, by certain "false and fraudulent representations and statements," made to plaintiff, Skillen, induced the latter to sell said mine to him (Gray) and thus violate the terms of the agreement between the plaintiffs. It is further argued by appellants that, if the agreement between themselves, as pleaded in the complaint, cannot be construed as an absolute sale of the mine by Skillen to Mitchel, it is at least an option, and that in that view the sale of the property to the defendant prior to the expiration of the time stipulated in said agreement was beyond the power of Skillen, and therefore said sale was void.

The answer admits the making of the pleaded agreement between the plaintiffs. It is, however, alleged therein, and such is the contention of the respondent here, that said agreement was not one for the sale and purchase of the property, but that by the terms thereof Mitchel was simply invested with the power of an agent to sell the mine for Skillen upon a certain stipulated commission for his services in negotiating and consummating such sale; that, prior to the time at which Mitchel sold the mine, the defendant had purchased the same absolutely from Skillen, paying the latter under said contract of sale the sum of $5,000, and had been let into the possession of said mine; that, antecedently to said sale to Gray, Skillen had notified Mitchel of his rescission and cancellation of the contract by which Mitchel became the agent of Skillen.

The principal contention of appellants, arising in the form of an attack upon certain findings of the court, involves the construction of the agreements entered into between the plaintiffs relative to the mining property concerned in this con-

troversy. The claim is that the construction of said agreements by the court below is incorrect.

It will not be necessary to deal extensively with the testimony, because we regard the point concerning the legal relations between Skillen and Mitchel, as established by their written agreements, as the most serious vital one presented, and, therefore, if it can be said that the construction by the court below of said agreements as to their legal effect is correct, then, under our view of the entire record, nothing remains to be done but to uphold the findings, the judgment and the order of the court refusing appellants a new trial.

The evidence discloses and the court found that, on the twenty-first day of July, 1905, the plaintiff, Skillen, as the owner of the "Lanky Bob Quartz Mining Claim," entered into an agreement with plaintiff, Charles A. Mitchel, by which the latter was given, to use the language of said agreement, "an option on the terms herein stated for the period of ninety days from date of this agreement" to purchase or sell said mine; that contemporaneously with the execution of said agreement, said parties entered into the following agreement in writing, the same having been written by the plaintiff Mitchel: "George G. Skillen agrees to pay Charles A. Mitchel 10 per cent of all money received from any parties he gets interested in the Lanky Bob Mine within the time of an agreement made with this 21st day of July, 1905, said per cent. to be placed to his credit in the Siskiyou Co. Bank at time of each payment. Such per cent. is for payment of his effort to get parties to buy said mine." The court further found that there was no consideration passed for these agreements, or for either of them, if considered separately.

As to these agreements between the plaintiffs, the court found, as a conclusion of law, "that the contracts made between Skillen and Mitchel July 21st, 1905, in relation to the Lanky Bob Mine, when taken together, constituted a contract of agency whereby Mitchel was given the authority within the time stated to sell the property described upon an agreed compensation of 10 per cent. of the purchase price. That such agency was not an agency coupled with an interest and therefore revokable at any time before a sale had been completed thereunder."

As we have seen, the contention of the appellants is that the foregoing construction by the court of the agreements in question is erroneous; that the first mentioned writing constituted a contract by which Skillen agreed to sell the mine to Mitchel for a certain agreed price, said sale to be completed and closed at any time within ninety days from the date of said agreement. But we think the court was clearly right in its construction of the agreements. The two agreements were properly construed together as representing and constituting, as they certainly did, one transaction. The first writing or agreement declares that the same is an option, the life of which was to exist for the period of ninety days. But the concluding covenants thereof are as follows: "Party of first part will make deed to any party or Co. said second party shall name upon making first payment and said time of one year from date of payment. *If party of second part fail to get parties interested in ninety days from date of this agreement it becomes null and void.*" It thus appears clear, even without the aid of the writing or agreement fixing the commission of Mitchel for the sale of the property, that said so-called "agreement of option" was not intended, nor could it have been understood to be, by the parties as having any other effect than to clothe Mitchel with the power of an agent to sell the property to other parties within the time limited by said agreement. The other or second writing, however, is, in our judgment, conclusive as to the relations in legal effect intended to be created and in fact established between the plaintiffs by the transaction of which the writings are evidence. Said writing was made and executed at the same time that the other writing was made and signed by the parties, and obviously was intended as a part of the transaction. The testimony of Skillen reveals that it was made "right after" the agreement of "option" was made, and written by Mitchel himself, and there is no other reasonable conclusion than that its purpose was to render absolutely clear and unquestionable the nature of the relations between the parties established by and through the transaction. It itself constitutes an interpretation of the first writing and the character of the relations of the parties concerning the property to which the transaction culminating in the writings related. Moreover, the testimony of plaintiff,

Skillen, himself adds support to the court's construction of the agreements between the plaintiffs.

The evidence shows and the court found that Gray first opened negotiations for the purchase of the mine with Mitchel in the latter part of the month of September. It appears that on that occasion Mitchel stated to Gray that he (Mitchel) was endeavoring to sell the mine to certain Chicago parties, and promised Gray that in the event said parties did not respond within ten days the latter would be given an opportunity to purchase the property. At the time of which we are speaking, Mitchel gave Gray permission to visit and inspect the mine. At the end of the ten days Gray again called on Mitchel, reminding him that the ten days had expired, and proposed to buy the mine. Mitchel, in reply, declared that Gray could not buy the property, as the Chicago parties had telegraphed that they would take it. Thereafter Gray personally conducted negotiations with Skillen, and on the 3d of October, 1905, these two entered into a written agreement by the terms of which Gray became the purchaser of the mine for the consideration of $12,000, of which $5,000 was paid upon the execution of said agreement. The court found, and the evidence justifies the finding, that Skillen notified Mitchel in writing of his withdrawal and revocation of Mitchel's agency to sell the mine before Mitchel received and accepted (as the latter claimed that he did) a $5,000 payment from the Chicago parties with whom he had been negotiating for the sale of the mine. Skillen testified and the court found "that before the said tender to defendant Gray (referring to the tender to Gray by Skillen before the commencement of this suit of the $5,000 paid Skillen by Gray under their agreement of sale) plaintiff Skillen offered to pay plaintiff Mitchel the 10 per cent. commission he had agreed to pay him in case Mitchel had obtained a purchaser for said property, but plaintiff Mitchel refused to receive it." Skillen, upon this point, testified that he offered Mitchel ten per cent on the sum for which he had sold the mine to Gray, or, in other words, $200 more than Mitchel would have received as a *commission* under his own agreement.

Counsel for appellants lay much stress upon the proposition, as purporting to prove which some evidence. was offered and received, that the respondent, after failing to

purchase the mine through Mitchel, proceeded to overthrow the force of and set at naught the agreement of the latter before the expiration of the time agreed upon, by declaring to Skillen that the same was not legal or binding upon him, and, in short, that respondent's successful transaction with Skillen was founded upon alleged fraudulent representations on the part of the defendant. If, as we have held, the agreements made by Skillen and Mitchel established only the relations of principal and agent between them, and that the sole benefit to be derived thereunder by Mitchel was a mere commission or percentage on the maximum amount for which the property was to be sold, then clearly it becomes unimportant what the representations were, whether true or false, upon which Gray succeeded in inducing Skillen to sell him the mine, or what he might have done to accomplish his purpose to buy the property over the agreement with Mitchel. The latter could not be concerned except to the extent of the commission to which he was entitled from Skillen. If the latter had been beguiled into selling the mine to Gray by the misrepresentations and fraud of Gray, and was thereby defrauded and injured, then the matter would be one to be settled between Skillen and Gray. The Chicago parties are not complaining here, nor is there anything in the pleadings or the record indicating that they are interested in the event of this litigation.

As to the claim that the Mitchel agreement amounted to an option (and the first writing considered independently of the "commission" agreement executed at the same time might be held to be an option), it is to be said that, even viewed in that light, it was, according to the undisputed testimony of Skillen, unsupported by a consideration. When the sale was made to Gray there had been no acceptance of the alleged "option" or "offer to sell," and, therefore, Skillen had the right, conceding it to be an option, to withdraw it. "Up to the time of acceptance, a contract such as this, where no consideration has been parted with, no binding obligation of any kind entered into, is a *nudum pactum.*" (*Brown* v. *San Francisco Sav. Union,* 134 Cal. 448, [66 Pac. 592].)

3. Certain rulings of the court during the course of the trial are specified as errors, but we think they are not of sufficient importance to require special notice. The conten-

tion is made that the court erred in submitting to the jury certain of the large number of special questions of fact, as to which the court asked for the judgment of the jury, and that in the rejection and acceptance of some of the answers returned by the jury the court erred to the prejudice of appellants.

We think the action of the court in the respect complained of, whether erroneous or not, is without prejudice, because immaterial. The suit here is purely one in equity, and a jury, therefore, was not allowed as of right but only as of grace and as advisory to the court. The court had the right, arbitrarily, if it so pleased, to reject the findings of the jury and adopt its own.

We find no prejudicial error in the record.

The judgment and order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 22, 1908, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 20, 1908.