[Civ. No. 1010. Fourth Appellate District.—August 25, 1932.]

QUALITY BUILDING AND SECURITIES COMPANY (a Corporation) et al., Appellants, v. H. E. (R.) BLED-SOE et al., Respondents.

494

O. E. Mark for Appellants.

Titus & Macomber for Respondents.

HARDEN, J., *pro tem.*—By the first count of their complaint plaintiffs seek to rescind a contract of purchase of real property, for failure of consideration, and to recover from defendants the sum of $14,000, the purchase price; and by the second count they seek damages in the sum of $14,000, for breach of contract, if the rescission demanded in the first count cannot be had. The case was tried before the court and a jury. On motion, the court directed a verdict in favor of the defendants upon both counts, pursuant to which judgment was entered for defendants. No findings of fact or conclusions of law were made. Plaintiffs appeal from the judgment.

The case turns on whether, in a transaction wherein defendants made a contract to convey real property to plaintiffs, defendants were obligated to convey and dedicate to the city of San Diego a designated lot, for park purposes, and bring about an acceptance of such conveyance and dedication.

On September 18, 1926, the Union Trust Company of San Diego held title, as trustee, to certain real property in San Diego, the beneficial ownership of which was vested in equal shares in H. R. Bledsoe and E. N. Young, defendants, as shown by declaration of trust No. S–7315 issued by said company.

On that date a "receipt for deposit on account of purchase of real estate" was prepared by said company, as the representative of the parties hereto, on the usual form of escrow instructions used by title companies, wherein payment of $1,000 by R. H. Cox "as agent for principals" was acknowledged, to apply upon the entire price of $14,000 for the purchase of lots 11 to 16, inclusive, of Hawthorne Terrace, San Diego (a portion of the property held by said trust company). The receipt contained many provisions which are not mentioned by us. Therein it was stated: "Lot 'A' to be used for park purposes restricted against buildings." Said receipt was not signed, but was approved by the signature of R. H. Cox. The names of the "prin-

cipals'', or purchasers, do not appear therein. Said receipt appears to be more in the nature of preliminary escrow instructions than a receipt for money.

On September 20, 1926, plaintiffs gave to said trust company written instructions, under the heading of said trust No. S–7315, substantially as follows: ''We hand you herewith our check in the sum of $1,000.00, and will pay you the further sum of $6,000.00 when you can advise us as follows: 1st: That the title to . . . (lots 11 to 16, inc., Hawthorne Terrace), shows vested in your company . . . 2nd: (With reference to easements) . . . 3rd: When there has been filed with you a surety bond guaranteeing the completion of certain improvements (as to grading, sidewalks and curbs, and installation of sewer, gas, water and electricity). 4th: The issuing to me of a contract for the purchase of the above-described lots . . . which contracts will acknowledge the receipt of an aggregate of $7,000.00, and the balance of $7,000.00 due on or before January 10, 1927, . . . 5th: Secure from H. E. (R.) Bledsoe and E. N. Young, the beneficiaries under your trust, an agreement that on or before January 1, 1929, they will authorize you to have lot 'A' of Hawthorne Terrace conveyed to the city of San Diego to be used for park purposes only, with the restriction that there shall be no buildings built thereon.'' The sum of $1,000, mentioned in said instructions, is evidently the same $1,000 mentioned in the receipt of September 18, 1926.

On the twentieth day of September, 1926, a written contract was entered into between said trust company, as seller, and the plaintiff company, as buyer, for the purchase of said lots 11 to 16, inclusive, Hawthorne Terrace, for $14,000 (payable upon substantially the same terms as are set forth in the receipt and instructions already mentioned). In the making of said contract the plaintiff company acted in its own behalf and in behalf of plaintiff Rutherford. In said contract no mention is made of the conveyance or dedication of lot ''A''; nor is any reference made to said receipt or to said instructions.

On September 22, 1926, the trust company, as trustee under said declaration of trust No. S–7315, and defendants entered into a written contract wherein it is recited that the purpose of the trust is the subdivision and general

improvement of the property covered thereby, and wherein defendants agree as follows: " . . . in consideration of the sum of $10.00 to them this day in hand paid, and in further consideration of the benefits derived and to be derived from the dedication as hereinafter named, and other good and valuable consideration, receipt whereof is hereby acknowledged, the parties of the second part (defendants) hereby jointly and severally promise, agree, guarantee, and warrant that they will on or before January 1st, 1929, authorize said first party as trustee aforesaid (trust company) to have lot 'A' of Hawthorne Terrace, contained in the property covered by said declaration of trust, conveyed and dedicated to the city of San Diego for park purposes only, provided however that said dedication shall contain the restriction that no buildings shall ever be built thereon."

The final payment of $7,000 upon the purchase price of said property was made by plaintiffs to said trust company on January 21, 1927; and deed to said lots was made to plaintiffs.

On December 18, 1928, defendants executed a writing addressed to the trust company, wherein reference was made to said trust No. S-7315, and particularly to said contract between defendants and said trust company of September 22, 1926, and wherein defendants stated: "Pursuant to said contract, you are hereby authorized and instructed to prepare and execute a deed conveying said lot 'A' of Hawthorne Terrace to the city of San Diego for park purposes with the restriction in said deed that no building shall ever be built upon said lot. . . . You are hereby further authorized and requested to deliver said deed to the city clerk of the city of San Diego as soon as the same has been executed."

On December 19, 1928, said trust company, as grantor, made and executed to said city, as grantee, a quitclaim deed to said lot "A" "for park purposes", which deed contained a condition against building thereon and for reversion to grantor for violation of condition. Said deed was delivered on December 21, 1928, and was transmitted to the mayor and common council of the city by the manager of operations thereof on December 28, 1928, with a letter wherein he stated: "Would recommend against the acceptance of this piece of land at this time. I also question the conditions embodied in the deed." As is shown by an entry in the

minutes of the city clerk, the city adopted the recommendation of the manager of operations on December 31, 1928. The city has not accepted a conveyance or dedication of said property.

Notice of rescission of contract and demand for return of purchase price was served by plaintiffs upon defendants on June 21, 1929, in which notice plaintiffs tendered a reconveyance of lots 11 to 16, inclusive, and offered to execute all instruments necessary to make the reconveyance effective. It recited that efforts had been made without success by plaintiffs to bring about an acceptance of lot "A" by the city for park purposes.

One of the principal contentions of appellants is that the complaint stated a cause of action based upon a mutual mistake of the parties. That mistake is said to have been the erroneous assumption of the parties that the city would accept a conveyance and dedication of lot "A" for park purposes. An effort is made to bring the case within the rules applied in such cases as *Hannah* v. *Steinman,* 159 Cal. 142 [112 Pac. 1094], and *Cutting Co.* v. *Peterson,* 164 Cal. 44 [127 Pac. 163]. In view of the decision reached on the appeal, we need not consider the point at length here. It will suffice to say that we do not agree with appellants. The complaint is not based upon a mutual mistake. (See sec. 1577 et seq., Civ. Code, and *Harding* v. *Robinson,* 175 Cal. 534 [166 Pac. 808], upon the subject of the mistake which equity will relieve.) Where a cause of action is founded upon an alleged mutual mistake, it is necessary that the complaint contain appropriate allegations thereof (6 Cal. Jur. 79; *Bradbury* v. *Higginson,* 167 Cal. 553 [140 Pac. 254]; *Harding* v. *Robinson, supra*). No such allegations are found in the complaint. We are required to determine the questions raised on the appeal without regard to the question of mutual mistake. That issue is not in the case.

The theory of the pleader, as expressed in the first count of the complaint, was that there had been a failure of consideration by reason of the refusal of the city to accept said lot "A"; and, as expressed in the second count, was that there had been a breach of contract, resulting in damages to plaintiffs, for the same reason. No question of laches is raised in defense. It was stipulated by defendants

during the trial that "it may be considered that the complaint in the action has plead a failure of consideration and a breach of contract by the defendants". Further reference to the allegations of said complaint will be made hereafter.

■ Plaintiffs offered evidence to establish conversations between the agents of the parties and the representative of the trust company at the time of the execution of the contract of September 20, 1929, between plaintiff company and the trust company, as to the contents of said instrument. Objection thereto was sustained by the court. The ruling was proper. While it was open to plaintiffs to prove the true consideration for said contract, or lack or failure of consideration, by parol evidence, plaintiffs were not entitled to endeavor to establish by such evidence that the obligations assumed thereunder were other than as expressed therein. (*Winchester* v. *Winchester,* 175 Cal. 391 [165 Pac. 965]; *Arnold* v. *Arnold,* 137 Cal. 291 [70 Pac. 23]; *First Federal Trust Co.* v. *Stockfleth,* 98 Cal. App. 21 [276 Pac. 371].) Evidence offered by the defendants and received by the court upon the same subject was likewise incompetent. We agree with appellants that said evidence should not have been received. We may not consider it. (*Harding* v. *Robinson, supra.*)

Plaintiffs offered and the court admitted proof of damages to plaintiffs by reason of the failure of defendants to convey and dedicate lot "A" for park purposes. Such evidence tended to establish that the value of the lots conveyed was only fifty per cent of the value they would have possessed if lot "A" had been dedicated and developed as a park.

Section 1641 of the Civil Code provides: "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." And section 1858 of the Code of Civil Procedure provides in part: " . . . where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

Section 1642 of the Civil Code reads: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Said rule has been applied in the cases of

*Cameron* v. *Burnham,* 146 Cal. 580 [80 Pac. 929]; *Gilliam* v. *Brown,* 126 Cal. 160 [58 Pac. 466]; *Elbert* v. *Los Angeles Gas Co.,* 97 Cal. 244 [32 Pac. 9]; *McCroskey* v. *Ladd,* 96 Cal. 455 [31 Pac. 558]; *Patterson* v. *Donner,* 48 Cal. 369; *Gerdes* v. *Moody,* 41 Cal. 335; *Holland-Meisell Co.* v. *Kelly,* 37 Cal. App. 610 [174 Pac. 698]; *Morrow* v. *Wells,* 30 Cal. App. 306 [158 Pac. 226].

 Section 1559 of the Civil Code provides: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." It is not necessary for such third person to allege that the contract has not been rescinded (*Stanton* v. *Santa Ana Sugar Co.,* 84 Cal. App. 206 [257 Pac. 907].) It is undoubtedly the rule that the contract upon which such third person may sue must show that it was made for his benefit (*Chung Kee* v. *Davidson,* 73 Cal. 522 [15 Pac. 100]; *Sherwood & Sherwood* v. *Gill & Lutz,* 36 Cal. App. 707, 712 [173 Pac. 171]). But it need not expressly name such third person (*Woodhead Lbr. Co.* v. *Niemann Inv. Co.,* 99 Cal. App. 456 [278 Pac. 913]). While the complaint does not allege in words that the contract of September 22, 1926, or the subsequent instructions of December 28, 1928, were expressly made for plaintiffs' benefit, it does allege that the contract of September 22, 1926, between defendants and the trust company was pursuant to plaintiffs' instructions of September 20, 1926; and it is alleged throughout the complaint that the conveyance and dedication of lot "A" were a part of the consideration to plaintiffs for the payment of said sum of $14,000. We think said allegations, when taken together with the stipulation of the defendants that the complaint "plead a failure of consideration and a breach of contract by defendants", are sufficient to meet the requirement that where a third person sues upon such a contract he must allege it was made for his benefit.

 Applying said rules of interpretation, we hold that plaintiffs' instructions of September 20, 1926, the contract between the trust company and defendants of September 22, 1926, and the defendants' instructions to the trust company of December 18, 1928, should be construed together as constituting an agreement between the plaintiffs and defendants collateral to the contract of sale of the lots dated September 20, 1926. "The rule that an agreement in writ-

ing supersedes all prior or contemporaneous oral negotiations or stipulations concerning its matter has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument." (*Savings Bank of Southern California* v. *Asbury*, 117 Cal. 96, 103 [48 Pac. 1081, 1083].) If said documents are considered together as constituting the contract between the parties with reference to lot "A", no difficulty is encountered in meeting the requirement imposed by section 1559 of the Civil Code, that the contract sued on by a third person must show that it was made for his benefit. While the agreement of September 22, 1926, does not show on its face that it was made for plaintiffs' benefit, the collateral agreement, when taken as a whole, does establish that fact. It is to be noted particularly that said agreement of September 22, 1926, indicates that further instructions were to be given by defendants to the trust company before January 1, 1929. The trust company accepted, in behalf of defendants, the initial payment by check of $1,000, and subsequent payments aggregating $13,000, under the conditions imposed by plaintiffs' instructions of September 20, 1926. The principal conditions thus imposed required the issuing of a contract for the conveyance of lots 11 to 16, inclusive, and the securing of an agreement with defendants authorizing said trust company to have lot "A" conveyed and dedicated to the city for park purposes. It is obvious, therefore, that the consideration of $14,000 covered the conveyance and dedication of lot "A" as well as the transfer of lots 11 to 16, inclusive. There is not the slightest indication in the documents or in the evidence of any intention on the part of either party hereto to abandon the project of having lot "A" conveyed and dedicated for park purposes.

Defendants contend that their only agreement was to *authorize* the trust company to have said lot "A" conveyed and dedicated to the city for park purposes. The word *authorize* has different meanings, dependent upon the connection and circumstances of its use. Ordinarily it means to clothe with authority, warrant or legal power; to give a right to act; to empower. It also has a mandatory effect or meaning, implying a direction to act. Whether or not there was a contractual obligation on the defendants to con-

vey and dedicate lot "A" for park purposes is to be ascertained not by reference to that word alone. The language of the agreement of September 22, 1926, is that the defendants "promise, agree, guarantee and warrant that they will . . . authorize (the trust company) to have lot 'A' conveyed and dedicated to the city . . . for park purposes." It should be borne in mind at all times that the trust company acted only as agent, without any other interest. In their instructions of December 18, 1928, defendants not only *authorized* but *instructed* said trust company to prepare and execute the deed, and authorized and requested its delivery. Said instructions of December 28, 1928, and said agreement of September 22, 1926, were pursuant to plaintiffs' instructions of September 20, 1926. As respects the conveyance and dedication of lot "A" for park purposes, plaintiffs' instructions of September 20, 1926, constituted the proposal therefor; and defendants' contract with the trust company of September 22, 1926, whereby they agreed to authorize said company to make such conveyance and dedication, and defendants' instructions of December 18, 1928, to said company to execute and deliver a conveyance of said lot for said purposes, constituted the acceptance of said proposal. To agree with respondents' contention would require us to believe that the parties contracted to leave it to the discretion of the trust company to convey and dedicate said lot "A" or not, as it saw fit.

The acts and conduct of the parties under the collateral agreement are proof of their understanding thereof, and furnish reliable means of interpretation (6 Cal. Jur. 304; citing *Ghirardelli & Co.* v. *Students' Express & Transfer Co.,* 175 Cal. 427 [166 Pac. 16]; *Woodard* v. *Glenwood Lbr. Co.,* 171 Cal. 513 [153 Pac. 951]; *Grant* v. *Bannister,* 160 Cal. 774 [118 Pac. 253], and many other cases). "Contemporaneous exposition is in general the best" (sec. 3535, Civ. Code).

Interpreting said collateral contract in the light of the acts and conduct of the parties thereunder, we hold that it was more than an agreement to offer said lot "A" for park purposes; it was an agreement to convey and dedicate said lot to the city for that purpose. As used, we think the words *convey* and *dedicate* were synonymous. A dedication by conveyance is not complete without acceptance (9 Cal.

Jur. 52; *County of Inyo* v. *Given*, 183 Cal. 415 [191 Pac. 688]; *City of Anaheim* v. *Langenberger*, 134 Cal. 608 [66 Pac. 855]; *Niles* v. *Los Angeles*, 125 Cal. 572 [58 Pac. 190]). The contract of defendants to convey and dedicate said lot "A" to the city for park purposes comprehended an acceptance of it for such purpose by the city. The fact that the city would not accept said lot for said purpose did not release the defendants from the obligations of their contract. They had contracted to *convey* and *dedicate* and had thereby bound themselves to bring about an acceptance.

■ Such being the contract of defendants, it follows that the defendants were guilty of a breach thereof by reason of their failure to procure an acceptance of lot "A" by the city for park purposes; and it also follows that by reason thereof there was a partial failure of consideration to plaintiffs.

■ Under the circumstances the plaintiffs were entitled to have their case submitted to the jury upon the issue of damages under the second count of the complaint. And upon the issues presented by the first count, findings of fact and conclusions of law were required (24 Cal. Jur. 933; *Schooler* v. *Williamson*, 192 Cal. 472 [221 Pac. 195]; *Holland* v. *Kelly*, 177 Cal. 43 [169 Pac. 1000]; *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 Pac. 238]; *Mitchell* v. *Gray*, 8 Cal. App. 423 [97 Pac. 160] (rescission of sale of mine).

The judgment is reversed.

Marks, Acting P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 16, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 24, 1932.