[S. F. No. 3182.   In Bank.—July 11, 1905.]

## GEORGE McCOWEN, and HALE McCOWEN, Appellants, v. J. W. PEW, Respondent.

SPECIFIC PERFORMANCE—OPTION TO PURCHASE TIMBER-LAND—TIMBER CUT BY VENDOR—PART PERFORMANCE—COMPENSATION—MEASURE OF DAMAGES.—Where specific performance is sought of a contract to convey timber-land, with all the timber thereon, at the option of the purchaser, for the use of a proposed railroad, to be exercised within one year, and the vendors, prior to exercise of the option, cut and removed some of the timber, rendering full performance impossible, the purchaser is entitled to take the land and timber remaining, with compensation for the timber removed. In such case the measure of damages is the same as in an action at law for partial breach of the contract of sale; and compensation cannot be·allowed in the enhanced value thereof, as if the timber removed had been left standing when the proposed railroad was completed.

ID.—EVIDENCE—VALUE AT EXERCISE OF OPTION—ERROR IN STRIKING OUT.—Where the purchaser had notice that the timber was removed

when the option was exercised, and he could then have acquired an equal quantity of timber-land of the same quality and value in the vicinity for less than one sixth of the enhanced value of the timber erroneously allowed, evidence of the value of the timber removed at the date of exercise of the option was relevant and material, and it was prejudicial error to strike it out.

Id.—DELAY IN MAKING TITLE—REMOVAL OF DEFECTS—TIME OF COMPENSATION.—Where the vendors were unable to make a good and sufficient deed until several months after the exercise of the option to purchase, when certain defects in the title of the property were removed, the compensation to be allowed to the vendee should be determined by ascertaining the value of the timber cut and removed at the time when the vendors were ready to complete the contract by making a deed sufficient to convey a good title to the vendee.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. M. Mannon, Judge.

The facts are stated in the opinion of the court.

James W. Oates, McNab & Hirsch, and D. M. Delmas, for Appellants.

Jesse W. Lilienthal, and J. E. Pemberton, for J. W. Pew, Respondent.

THE COURT.—This is an appeal by the plaintiffs from a judgment in favor of the defendant J. W. Pew and from an order denying the plaintiffs' motion for a new trial.

The plaintiffs were the owners of a tract of land in Mendocino County, containing about eleven hundred and sixty acres, and on October 16, 1899, they and the defendant Pew executed an agreement whereby they granted to Pew the option during the ensuing twelve months to acquire from the plaintiffs the land in question for himself or his assigns for the sum of fifteen dollars per acre. At the time of the making of the agreement Pew was not acting in his own interest solely, but for others associated with him, and the agreement was made in his name for the benefit of himself and of these other persons. These persons contemplated the building of an extension of the San Francisco and North Pacific Railroad into the vicinity of the lands in question, and their purpose in obtaining the option was to get the control of the timber upon

the land so that they could realize the increased value thereof in case the railroad was built, and so that the timber when manufactured into lumber would furnish freight for the railroad when completed. This purpose was known to the plaintiffs when the option was given. Between the date of the making of the agreement and October 11, 1900, the plaintiffs cut and removed from about ten acres of the land in question a large quantity of redwood, pine, and oak timber, the value of which, and the particular time at which its value is to be determined, is the principal issue in this case. On October 11, 1900, Pew, having received information of the cutting of the timber in question, gave notice in writing to the plaintiffs that he elected to exercise the right to acquire the land covered by the agreement, and offered, upon receiving a good title to the land, to pay for the same at the rate of fifteen dollars per acre, less the loss in value of the land occasioned by the removal of the timber by the plaintiffs. There were certain encumbrances upon the title which constituted defects in the title, which were not removed until some time in December following, or about the first of January, 1901. The parties could not agree upon the amount to be deducted from the price on account of the removal of the timber, but, subject to the settlement of that question, the plaintiffs were ready to perform their agreement and convey a good title on the 6th of December, 1900. Not being able to agree upon the amount of compensation to be allowed for the timber removed, the plaintiffs claimed that the agreement had been forfeited, and in March, 1901, brought the present action against the defendant Pew to quiet title. Pew filed a cross-complaint, setting out the agreement aforesaid, averring the election to acquire title thereunder by himself and those associated with him, and their purpose in acquiring the lands as aforesaid, and asking that the court enforce the specific performance of the contract acording to its terms, and allow a deduction from the price, as compensation for the loss to him by reason of the timber removed by the plaintiffs prior to the time he gave notice of his election to exercise the option, and alleging that the sum of four thousand dollars would be necessary to reimburse him for the loss occasioned by the removal of the said timber.

The court found in favor of the allegations of the cross-

complaint, and determined that the amount of compensation to be allowed on account of the timber removed was $3,787.36, and thereupon judgment was given for the specific performance of the agreement upon the payment by Pew of the sum of $13,537.04, being the purchase price of the land according to the agreement, less the amount of compensation allowed by way of abatement of the price.

Upon the trial it appeared that the railroad contemplated by the parties when the agreement was made was then about completed, and the defendant introduced evidence of the value of the timber removed if it had been at that time standing upon the land, and upon this evidence the court found the amount as above stated. The plaintiffs on their behalf introduced evidence to prove the value of the timber on October 11, 1900, at the time the defendant Pew gave notice of his election to exercise the option. This evidence was taken subject to the objection of the defendant that it was incompetent, irrelevant, and immaterial, and subject to a motion to strike it out. Subsequently during the trial the motion to strike out was granted, to which the plaintiffs excepted, and this presents the controlling question in the case.

The contention of the appellants is, that the amount of the compensation to be allowed to the defendant Pew for the want of entire performance of the contract of sale by the plaintiffs is to be determined in the same manner as damages recoverable upon the breach of a contract to sell real estate. They say that the case in substance is a simple breach of an agreement to sell real property; that they had agreed to sell the land, including the timber, and that when the time for performance came they had, so far as the timber is concerned, violated their agreement by removing it from the land. They concede that this must be construed to be a breach made in bad faith within the meaning of that phrase as used in section 3306 of the Civil Code, and claim that the measure of compensation is the same as the measure of damages would be in case of a simple suit for damages for the breach of the agreement,—namely, "the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach"; or, in other words, the market value of the trees at the time of the breach upon October 11, 1900, if they had been at that time growing upon the land.

The defendant contends that this suit is not an action for a breach of contract, but for specific performance, with compensation for the want of entire performance, as provided in section 3386 of the Civil Code, and, according to the well-established rule of equity concerning specific performance with compensation, a court of equity "will adjust the equities of the parties by placing them, as far as possible, in the same position they would have occupied had the agreement been completed at the prescribed day" (Pomeroy on Contracts, sec. 429), and that as, if the agreement had been fully performed, they would have had possession of the timber, they could then have selected their own time for cutting and removing it, and would have secured all the profits contemplated by them at the time they made the agreement, by holding the timber until the completion of the railroad, and then selling it at the advanced price then obtainable, according to the evidence. It is apparent that the defendant had full notice of the breach of the agreement at the time he made his offer to take the property. There is evidence indicating that he could at that time have restored himself to the same position he would have occupied if the contract had been fully performed, by purchasing other land in the vicinity, of the same character, and having thereon an equal quantity of timber of the same quality, according to the evidence introduced, for about the price of six hundred dollars. It would appear fully as equitable to require th defendant to take this course, and thereby replace his loss, as to require the plaintiffs, now that the value of the property had been enhanced, to make good the defendant's loss by paying the sum which could now be obtained for the property. We think the court erred in granting the motion to strike out the testimony as to the value at the time of the election by the defendant to take the property.

The true rule must be that in so far as specific performance is impossible and it becomes necessary to give compensation for the want of entire performance, the measure of damages is to be computed according to the legal rule, and the case is to be treated as to that extent an action for a breach of the contract. If the situation were such that there could not be a specific performance as to any part of the contract, there could be no question as to this. The sole remedy

of the vendee would be his action for the damages given by the law. The fact that partial specific performance is still possible cannot logically justify the application of a different rule as to the part not capable of specific performance. So far as the vendee seeks compensation for the failure of the vendor to wholly perform, his action is simply one for the partial breach of contract. The fact that he is in a court of equity seeking specific performance as to the part of the contract capable thereof does not alter his situation as to the remaining part. A court of equity having jurisdiction of the cause for the purpose of granting the equitable relief of specific performance will in the same action, in addition to granting such relief, award such damages as may have been caused by the partial breach, but in so doing it is simply enforcing a legal remedy and must follow the law, and is therefore bound by the rules of law as to the measure of damages for the partial breach. Another consideration against the adoption of the rule contended for by the respondents is that it would tend to encourage the maintenance of speculative actions. Where there had been a partial breach of the contract for the sale of real estate and lapse of time had demonstrated that the property was very much enhanced in value there would be a great temptation on the part of the vendee to make the attempt to show that he made the purchase for the very purpose of obtaining this enhanced value, and that such purpose was communicated to the vendor, and thereby obtain the benefit of the operation of time and circumstances in his favor. The compensation to be allowed to the vendee in this case for the want of entire performance should be determined by ascertaining the value of the timber cut and removed at the time when the vendors were ready to complete the contract by making a deed sufficient to convey good title to the vendees. It is proper to say that according to the evidence given upon the trial the vendors were not ready to convey on October 11, 1900. Some defects in the title existed which were not removed until several months thereafter, and the time was extended by consent. The proper time for ascertaining the value of the property was the time when the vendors were ready to perform.

The judgment and order are reversed and the cause remanded for a new trial.

VAN DYKE, J., dissenting.—I dissent and adhere to the opinion in Department.

BEATTY, C. J., concurring.—I concur in the judgment and in the main proposition upon which it is rested. In decreeing specific performance of a vendor's contract to convey lands with compensation for a partial breach which renders full performance impossible, a court of equity must estimate the compensation for the breach by the same rule that controls a court of law in an action at law, and that is the rule prescribed by section 3306 of the Civil Code.

In accordance with this rule the superior court should have limited the inquiry as to the value of the timber and wood to the date of the breach of the contract, which, in my opinion, was the eleventh day of October, 1900, the date of defendant's notice of his election to purchase. That was the date when a conveyance was due, and when the breach must be considered to have occurred.

Rehearing denied.

The following is the opinion referred to in the dissenting opinion of Mr. Justice Van Dyke, rendered in Department One on the 28th of November, 1904:—

VAN DYKE, J.—This appeal is from a judgment in favor of the defendant and an order denying plaintiffs' motion for a new trial. The plaintiffs being the owners of a certain tract of land in Mendocino County near Willits, on the sixteenth day of October, 1899, executed an agreement, as parties of the first part, and defendant J. W. Pew, as party of the second part, whereby "for value received by said party of the first part from said party of the second part, and to induce said party of the second part to undertake the disposition of said property, said party of the first part has granted unto said party of the second part, his representatives and assigns, for the period of twelve months from the date hereof, an exclusive and irrevocable option to acquire from said party of the first part for said party of the second part, or his assigns, or such parties as he may negotiate with, for the sum of fifteen dollars per acre, a good and sufficient title to the property situate in Mendocino County, state of California,

and more particularly described as follows [then giving the description], containing 1,160 acres more or less. In consideration of the foregoing, the said party of the second part has agreed, without cost to said party of the first part, to use his best endeavors to dispose of said property, either by acquiring same or selling the same to others. Provided, however, that nothing herein contained shall require said party of the second part, his representatives or assigns, to pay or account to the said party of the first part any sum realized in such acquisition or disposition above the consideration herein fixed as the value of said property.'' This agreement was duly acknowledged and recorded in the recorder's office of Mendocino County. It apears that at the making of said agreement defendant Pew was not acting in his own interest or behalf, but for others associated with him, and that said agreement was made for the benefit not only of himself but also of said others associated with said defendant Pew, although made and taken solely in his name as party of the second part; that at the time said agreement was made defendant Pew and the persons so associated with him were contemplating and preparing for the building of a railroad from some point on the line of the railroad of the San Francisco and North Pacific Railroad Company into some portion of Mendocino County from which timber and wood could be procured in large quantities; that at said time different locations or routes for said road were under consideration by them, and it had been determined by them to so build said railroad; and one of the contemplated locations was from Ukiah northerly to Willits in said county of Mendocino, and that the building of said railroad along the route last mentioned greatly increased the value of the lands described in the agreement to sell, or option to buy, by making the timber thereon accessible to a market, and that the selection of the route and location depended largely upon securing options upon timber lands along the line of the proposed railway; and that these facts were known to the plaintiffs at the time of the making of said agreement, and said agreement was made by them in order to induce the building of said railway from Ukiah to Willits in preference to other routes. That between the date of the making of the agreement mentioned and October 11, 1900, the plaintiffs cut and removed or de-

stroyed, or caused to be cut and removed or destroyed, from
or on said lands a large quantity of redwood, pine, and oak
timber; that on October 11, 1900, defendant Pew gave written
notice to each of the plaintiffs that he elected to exercise the
option granted to him in said agreement of October 16, 1899,
and offered to purchase and pay for said land according to
the terms of said agreement upon proper compensation and
deduction from said purchase price for the depreciation in
value thereof caused by the destruction and removal of the
timber standing upon said land at the time of entering into
the agreement, but the plaintiffs refused to execute or deliver
a deed to said premises, except upon the payment of the sum
spcified in the agreement, less an allowance not to exceed six
hundred dollars for the destruction and removal of said
timber and cordwood.

The parties being unable to agree upon the proper amount
of deduction or allowance, in consequence of the cutting and
removing and destruction of timber by the plaintiffs as afore-
said, the plaintiffs, on March 1, 1901, brought this action,
setting forth the agreement in question, and alleging the fail-
ure to comply with the same on the part of the defendant
Pew, and asking that the same be declared void and of no
validity, and that the defendants have no estate or interest
whatever in said land and premises adverse to the plain-
tiffs.

To this complaint defendant Pew interposed and answered,
and also filed a cross-complaint. In the cross-complaint (as
amended) the making of the agreement in question and the
facts already stated are set forth, and, further, that said
defendant and persons associated with him in the said agree-
ment had secured the selection of a route and location for
said railroad to Willits, and had surveyed and located the
same, and it was in process of construction, and being rapidly
built and pushed toward completion, and that the considera-
tion and inducement causing preference to be given to said
location was the option given in said contract of the privilege
of purchasing said land, and other similar contracts with
reference to other lands adjacent thereto. And that said
options were all had and said contracts all entered into solely
for the purpose of securing freight for said railroad, and the
added valuation that would be given to said lands by the

construction of the railroad in excess of the price set forth in said contracts respectively.

It is further alleged in said amended cross-complaint that, subsequent to the making of said agreement and prior to the eleventh day of October, 1900, and during the years covered by the option, the plaintiffs knowingly and wrongfully violated the rights of the defendant arising out of said contract by cutting and removing from said lands large and valuable quantities of timber and wood products, giving the quantity so cut, removed, and destroyed, and that the lands described in said contract and agreement were thereby depreciated in value and were worth four thousand dollars less than before such destruction and removal, and that said defendant Pew and the persons associated with him, as aforesaid, suffered damages thereby in the sum of four thousand dollars. That defendant had duly performed all the conditions of said agreement on his part to be performed, and ever since the making thereof had been ready, willing, and able, and still was ready, willing, and able, to fulfill said agreement on his part, wherefore the defendant asked judgment against the plaintiffs that the court ascertain, fix, and adjudge the amount due and which should be paid to complete the said purchase in accordance with the contract, and allow due and equitable deductions from the price named in the contract on account of the wrongful cutting, destruction, and removal of the timber aforesaid, and also that an allowance be made on account of certain encumbrances therein mentioned and described, and the defendant offered to complete the purchase upon a proper compensation for the wrongful removal and destruction of the timber on the property in controversy. (The encumbrances referred to, however, at the date of the trial, December, 1901, had been satisfied of record.)

The court found against the plaintiffs, and substantially according to the allegations of the defendants' amended cross-complaint, and assessed the damages caused by the removal and destruction of the timber in the amount of $3,787.36, and judgment upon the findings was accordingly entered that the plaintiffs take nothing, and that the agreement set forth in the cross-complaint be specifically performed, and the plaintiffs execute and deliver to the defendant Pew a good and sufficient conveyance upon the premises in question, on pay-

ment by defendant Pew of the sum of $13,537.04, being $15 per acre, as mentioned in the agreement, less the sum of $3,787.36, damages for the destruction or cutting and removal of the timber standing on said premises at the date of said agreement.

One of the main contentions on the part of the appellants is, as stated by their counsel, "that the option in this case was merely an offer to sell the property, and that in order to make a valid contract, capable of specific performance, it was necessary for the defendant Pew, within the time set in the option and before its withdrawal, to acept the offer in the *exact terms in which it was made*. . . . An acceptance of an offer to purchase the property must be unconditional in order to create a contract, and the slightest condition attached to an attempted acceptance of the option prevents an agreement of the parties." This contention cannot be maintained. In *Burks* v. *Davies*, 85 Cal. 110, it is said that the vendor of an option to purchase is in duty bound to be ready at all times within the period of the option given, during which a conveyance may be demanded by the purchaser to convey a good title to all the land which he has agreed to sell. In this case, as admitted by the appellants, the land, at the time of executing the agreement to sell, or option, as it is termed, was "chiefly valuable for timber," and it is stated and found by the court that the consideration moving the defendant in securing the option was the construction of the contemplated railroad by the tract of land in question for the purpose of obtaining the timber upon said land, and within the time allowed by the option by the act of the plaintiffs the land was depreciated, as found by the court, by the removal of the timber in question, in the sum of $3,787.36. The plaintiffs, therefore, did not hold themselves ready at all times during the period of the option to convey the land in question which they had agreed to convey,—that is, with the timber standing on it, which was, as stated, a very material part of the realty. Defendant within the year had the right to accept the option and have the land conveyed to him as it existed at the date of the agreement, and inasmuch as the plaintiffs could not convey the land in such condition, the defendant had the right to have it conveyed as it was at the expiration of the year, upon payment of the price agreed to be paid, less the defi-

ciency in the value of the property caused by the act of the plaintiffs. In *Marshall* v. *Caldwell,* 41 Cal. 611, the contract showed that the plaintiff in said action sold the whole of the land in question, but it appeared he only held an undivided interest therein, and it is said the plaintiff would not be allowed to aver, in the face of the agreement, that he sold less than the whole title to the land. "Upon the discovery by the vendee, that the plaintiff held only the undivided half of the land, he was entitled to proceed at once to rescind the contract; but he was not obliged to adopt that course. He was entitled to proceed, as he has done in this case, to have the contract specifically enforced to the extent of the plaintiff's interest in the land." *Spires* v. *Urbahn,* 124 Cal. 110, was a case involving the construction of a contract of option something similar to the one here under consideration. The complaint in that case alleged that the plaintiff's assignor built and put in operation an electric road in pursuance of the agreement within the time limited. The court found the allegation of the complaint to be true. The point contended by the appellant there was that there was no consideration or mutuality in the contract. The court say: "It is now too well settled to permit of controversy that in such cases the completion of the work is an executed consideration which is sufficient to give mutuality to the contract. . . . These contracts have become familiar as stimulants to the construction of railroads and other public works, the inducement to the promisor, whether expressed or presumed, being the probable enhancement of the value of property by the construction. That such contracts or mere offers, unilateral at first, may be enforced when mutuality is secured by an executed consideration, is sustained upon well-recognized principles. The consideration takes its strongest form when it is executed." The same question was also under consideration in this court in the case of *Thurber* v. *Meves,* 119 Cal. 35, and *Sayward* v. *Houghton,* 119 Cal. 545. In the latter case it was said: "An original lack of mutuality in the right to specific performance will not preclude the enforcement of the contract where this want has been removed at the time the action is brought." As already stated, the road was laid out from Ukiah to Willits on the route as contemplated in case the option was secured, and was under construction at the time the action was

brought; and at the trial was so far completed as to allow trains to pass over the same.

The agreement or option was executed, as appears, to the defendant Pew and his representatives or assigns, and the allegation of the cross-complaint and the finding of the court are that others were associated with him in the transaction. In fact, the testimony shows that the real party was a general development company, a corporation, in which Pew was a stockholder, and that this general development company built the road from Ukiah to Willits. It is, therefore, claimed on the part of the plaintiffs that defendant Pew could not maintain a cross-action in his own name. "An executor or administrator, or trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the persons for whose benefit the action is prosecuted. A person with whom, or in whose name, a contract is made for the benefit of another, is a trustee of an express trust, within the meaning of this section." (Code Civ. Proc., sec. 369.) Although Pew was interested in the corporation, he was, nevertheless, in the transaction under consideration, a trustee within the meaning of the code. (*Giselman* v. *Starr,* 106 Cal. 651-657.)

There is nothing in the contention that the option was not accepted on the part of the defendant Pew within the time specified. Notice of acceptance was given within the year, as already shown, and it was alleged in the cross-complaint and so found by the court that the option was accepted within the time. In fact, the only question remaining, as appears by the notice from the plaintiffs to the defendant Pew, was the amount of damages or deduction to be allowed in order to carry out the contract. The defendant Pew claimed as the amount of damages the value of the timber taken or destroyed during the period of the running of the option—in other words, according to the enhancement of the value of the property to be purchased by the completion of the railroad, including the timber standing thereon. And, on the other hand, the allowance proposed by the plaintiffs of six hundred dollars deduction of damages was based upon the value of the timber so cut and removed from the land in question at the date of the agreement; and, while this controversy as to the amount to be allowed was pending, the plaintiffs brought the suit in

question.  The action of the plaintiffs in the premises was a waiver of any tender of the amount stipulated in the agreement.  The proper sum to be tendered at the time had not been ascertained and could not be until the true amount of damages caused by the wrongful act of the plaintiffs themselves in cutting and removing the timber in question had been determined; and it further appears that the plaintiffs refused to make a conveyance except for the full amount specified in the option less the sum of six hundred dollars, which they estimated as being the damages.  (*Dowd* v. *Clarke,* 54 Cal. 48; *Merrill* v. *Merrill,* 95 Cal. 338; *Sheplar* v. *Green,* 96 Cal. 218; *Barsolou* v. *Newton,* 63 Cal. 226.)

The testimony offered on behalf of the plaintiffs in reference to the value of the timber or stumpage referred to the time as of a date before the building of the road, and without regard to the same, which testimony was admitted subject to objection and motion to strike out, and at the conclusion of the trial the court granted defendant's motion and struck out said testimony, and thereupon plaintiffs moved to strike out defendant's testimony as to the value of the lumber, wood, and tanbark as of a time when the road was located and built, which motion was denied by the court.  Clearly the rule insisted upon by the plaintiffs would not afford an equitable compensation to the defendant for the wrongful acts of said plaintiffs in stripping the land in question, after the agreement of option had been entered into.  At the time when the defendant was required to take said land and pay the amount stipulated in the agreement, the true measure of compensation and amount to be deducted from the price would seem to be the difference in value between the land as stripped and the land with all the timber standing and growing upon the same.

We have examined the other alleged errors and improper rulings as claimed by the appellants, but are of the opinion that if any errors were committed, as claimed, they are not of sufficient importance to be of any substantial injury to the appellants or to justify a reversal.

For the foregoing reasons the judgment and order denying motion for new trial must be affirmed, and it is so ordered.