[Civ. No. 885.   Third Appellate District.—February 21, 1912.]

## GEORGE McCOWEN and HALE McCOWEN, Appellants, v. J. W. PEW, Respondent.

ACTION TO QUIET TITLE TO TIMBER LANDS—OPTION TO PURCHASE—SPE-
CIFIC PERFORMANCE—CROSS-COMPLAINT—INDUCEMENT FOR RAILROAD
ROUTE—BUILDING NOT A CONDITION.—In an action to quiet title to
timber lands, in which defendant set up an irrevocable option to pur-
chase the same, the specific performance of which was sought by
cross-complaint, which alleged that defendant and his associates
proposed to construct a railroad, the route for which depended
largely upon purchases of timber lands, which plaintiffs well
knew, and that the inducement and consideration moving plain-
tiffs to enter into said contract was the encouragement and induce-
ment of the building of said railroad from Ukiah to Willits, in
preference to other routes, it is held that the cross-complaint can-
not be rationally interpreted to justify the inference that the
actual building of such railroad constituted any part of the con-
sideration moving plaintiffs to grant the option, or imposing the
same as a condition precedent to defendant's right to a convey-
ance.

ID.—SUFFICIENCY OF CROSS-COMPLAINT TO STATE CAUSE OF ACTION—
DECISION UPON LAST APPEAL—LAW OF CASE—DIFFERENT REASON
IMMATERIAL.—The decision upon the last appeal that the cross-com-
plaint of the defendant stated facts sufficient to constitute a cause
of action is the law of the case as to its sufficiency upon the pres-
ent appeal.   It is immaterial that the question arose upon the last
appeal upon the refusal of the trial court to admit any evidence
in support thereof, while its sufficiency to state a cause of action
is here urged for a different reason.   The law does not counte-
nance a piecemeal method of attacking a pleading, which is ad-
judged valid by the law of the case.

ID.—ABSENCE OF PROMISE AS CONSIDERATION OF OPTION—CONDITIONAL
BENEFIT OF PURCHASERS.—Whatever inducement may have moved
the plaintiffs in granting the option to defendant, it is held that
no agreement or promise was made by defendant, in considera-
tion of the option, to select any particular route, or that defend-
ant or his associates undertook to do anything in consideration
thereof; but that they merely contemplated that any future pur-
chase of the timber lands, if paid for at full value under the op-
tion, would be an inducement for freight to be carried by them
over one of four contemplated routes, for their benefit.

Id.—Alleged Variance Between Option and Acceptance in Find-
ings Following Cross-complaint—Law of Case.—The conten-
tion of plaintiffs that the findings disclose a variance between
the option granted by the plaintiffs and the acceptance by the
defendant, and do not support the judgment, is untenable, where
it appears that the finding objected to in this particular substan-
tially follows the averments of the cross-complaint, the sufficiency
of which has become the law of the case whether under the decision
of the supreme court upon the last appeal or under the decision
rendered by the same court upon a first appeal thereto, which de-
cided the point which is here made.

Id.—Timber Cut by Vendors During Life of Option—Acceptance
of Original Option—Compensation—Effect of Assent by
Vendee.—Where the option was of the right to purchase eleven
hundred and sixty acres of land at the rate of $15 per acre
within twelve months, and during the life of the option the
vendors cut a large amount of timber from the land, and within
the time limited defendant gave notice of the acceptance of the
option according to its terms, but demanded compensation for the
depreciation in value by the cutting of the timber, to which plain-
tiffs did not object but assented thereto in writing, they thereby
distinctly recognized that the acceptance by defendant was of the
identical option which they had granted to him, and which they
agreed to make good by compensation.

Id.—Rule of Part Performance With Compensation upon Specific
Performance—Reduction of Price not Involved.—Where the
vendor through his own fault is unable substantially to perform
his whole contract, the vendee may, at his election, have specific
performance in equity to the extent of the vendor's ability to per-
form, with compensation for the deficiency. This rule of equity
is also embodied in section 3386 of the Civil Code. The rule of
compensation does not involve a reduction of the price agreed to
be paid, its sole object being to fill up the measure of value for
the price agreed, which has been diminished by the vendor's fault.

Id.—Waiver and Estoppel of Vendors.—The plaintiffs, as vendors,
having expressly acquiesced in the acceptance of the option
granted by them to defendant, and treated and recognized it as
an acceptance of the precise option which they granted to him,
they thus waived any objection to the acceptance on the ground
that it varied from the terms of the option; and they are es-
topped to take advantage of their own wrong in deliberately chang-
ing the value of the property purchased by their unauthorized
acts during the life of the option.

Id.—Consideration for Option—Merger in Agreement.—It is un-
necessary to inquire whether a finding as to the original con-
sideration for the option is or is not supported, since the option

as an option agreement became *functus officio* when it was accepted by the defendant according to its terms during the existence of the option which had not been previously revoked, which acceptance was acquiesced in by the plaintiffs, making it a binding contract between the parties.

APPEAL from a judgment of the Superior Court of Mendocino County.  J. Q. White, Judge.

The facts are stated in the opinion of the court.

H. C. McPike, and Robert Duncan, for Appellants.

Jesse W. Lilienthal, and James E. Pemberton, for Respondent.

HART, J.—The plaintiffs commenced this action for the purpose of securing a decree quieting their title to certain lands described in the complaint and declaring void and of no effect a certain written instrument out of which grows the claim by the defendant of an interest in or right to acquire title to the property so described.

To the complaint the defendant filed an answer, wherein he sets forth and reveals the nature of his interest in said property, alleging that it grows out of and is based upon a certain agreement of option between the plaintiffs and the defendant, whereby the owners tendered and offered to the latter the option to purchase, within twelve months from the date of the execution of said agreement, the real property described therein and referred to in the complaint, which said option he accepted.

The defendant also filed a cross-complaint setting up said agreement, and, among other things, alleging that, within the time limited by the agreement, he, in a written notice delivered to each of the plaintiffs, signified his election to exercise the option granted to him by said agreement to purchase the property referred to therein, and that he was ready, willing and able to pay for said lands, according to the terms of said option, "upon proper compensation to said defendant and deductions from said purchase price" for certain alleged encumbrances on said lands and for the depreciation in the value thereof by reason of the alleged destruction by the

plaintiffs, during the life of the option, of certain timber on said property. Upon the averments of the cross-complaint, the defendant asked for a decree specifically enforcing the agreement of sale which was the culmination of the option and its acceptance. Relief was further prayed for as to the issue involving the alleged encumbrances on the lands and the alleged destruction of the timber and the removal of the same from said property.

Judgment passed for the defendant, and this appeal is taken by the plaintiffs from said judgment and the order denying them a new trial.

This is the third appeal prosecuted in this cause. The first (*McCowen et al.* v. *Pew*, 147 Cal. 239, [81 Pac. 958]) involved the sole question whether, full performance of the contract of sale being impossible because of the breach thereof by the vendors in cutting and removing timber from the lands which are the subject of said contract, the compensation to which the vendee was entitled for the depreciation in the value of the property by reason of the cutting and removal of such timber should be based upon the value of the timber so removed at the time the defendant gave notice of his election to exercise the option or upon the value of said timber, if it had remained standing on the land, at the time of the near completion of a railroad with a special view to the construction of which the defendant, so it is alleged, sought and secured the option to purchase said lands. The evidence showed that said railroad was about completed at the time of the trial, and the trial court based its valuation of the timber so removed as of that time, had it then been standing on the land, and found for the defendant accordingly.

Upon the ground that the trial court erred in its ruling upon that question, the supreme court reversed the judgment and order and returned the cause to the court below for retrial.

The second trial of the case resulted in a judgment for the plaintiffs granting them the relief prayed for in their complaint. The defendant appealed from said judgment and the order refusing him a new trial, and the cause was again reversed and remanded for trial *de novo*. The opinion of the supreme court on the last-mentioned appeal is reported in 153 Cal. 735 et seq. [15 Ann. Cas. 630, 21 L. R. A., N. S.,

800, 96 Pac. 693]. The points there urged for a reversal
and decided in said opinion will be particularly noticed in
connection with the consideration of the points urged here
for a reversal of the judgment.

Before proceeding to a consideration of the points made by
the appellants, however, it will perhaps be more conformable
to an orderly course to briefly recite the facts of this pro-
tracted litigation. In doing so, we conceive that we can do
no better than to state them in the language of the supreme
court, in the case reported in 147 Cal., page 300, [81 Pac.
962], as follows:

"The plaintiffs were the owners of a tract of land contain-
ing about eleven hundred and sixty acres, and on October 16,
1899, they and the defendant Pew executed an agreement
whereby they granted to Pew the option, during the ensuing
twelve months, to acquire from the plaintiffs the land in
question, for the sum of $15 per acre. . . . Between the date
of the making of the agreement and October 11, 1900, the
plaintiffs cut and removed from about ten acres of the land
in question a large quantity of redwood, pine and oak timber,
the value of which and the particular time at which its value
is to be determined is the principal issue in this case. On
October 11, 1900, Pew, having received information of the
cutting of the timber in question, gave notice in writing to
the plaintiffs that he elected to exercise the right to acquire
the land covered by the agreement, and offered, upon receiving
a good title to the land, to pay for the same at the rate of
$15 per acre, less the loss in value of the land occasioned by
the removal of the timber by the plaintiffs. There were cer-
tain encumbrances on the title, which constituted defects in
the title, which were not removed until some time in December
following, or about the 1st of January, 1901. The parties
could not agree upon the amount to be deducted from the
price on account of the removal of the timber, but, subject to
the settlement of that question, the plaintiffs were ready to
perform their agreement and convey a good title on the 6th
of December, 1900. Not being able to agree upon the amount
of compensation to be allowed for the timber removed, the
plaintiffs claimed that the agreement had been forfeited, and
in March, 1901, brought the present action against the de-
fendant to quiet title. Pew filed a cross-complaint, setting

out the agreement aforesaid, averring the election to acquire title thereunder by himself and those associated with him, and their purpose in acquiring the lands as aforesaid, and asking that the court enforce specific performance of the contract according to its terms, and allow a deduction from the price as compensation for the loss to him by reason of the timber removed by the plaintiffs prior to the time he gave notice of his election to exercise the option.''

The agreement of option, or the part thereof important or specially material to the inquiry here, reads as follows:

''Now, therefore, for value received by said party of the first part [plaintiffs] from said party of the second part [defendant], and to induce said party of the second part to undertake the disposition of said property, said party of the first part has granted unto said party of the second part, his representatives and assigns, for the period of twelve months from the date hereof, an exclusive and irrevocable option to acquire from said party of the first part for said party of the second part, or his assigns, or such parties as he may negotiate with, for the sum of $15 per acre, a good and sufficient title to the property situate in Mendocino county, state of California, and more particularly described as follows:'' Then follows a description of the property. Said agreement was signed and executed by both the plaintiffs and the defendant, and was recorded in the office of the county recorder of Mendocino county, on the twenty-first day of September, 1900.

Counsel for the appellants, at the oral argument, expressly abandoned the appeal from the order, thus waiving any alleged errors of law occurring at the trial, and declared that they relied, and would rely, solely upon the points made upon the appeal from the judgment. We shall, therefore, in the consideration of this appeal, confine ourselves to a review and decision of what is in effect the single proposition, urged in the oral argument with the skill of a master and the vigor that is the offspring only of unfeigned earnestness, submitted here, viz., that the cross-complaint is bad for want of sufficient facts.

This postulate is sought to be supported and sustained chiefly by two points, the first of which in the order in which we shall consider them being a direct attack on the sufficiency of the cross-complaint to state a cause of action, and the second involving a direct attack on the findings, which, since in that

regard they follow, substantially, the allegations of the cross-complaint, may also be treated as challenging that pleading on the ground that the facts therein stated are not such as to entitle the defendant to the relief demanded thereby and as awarded by the decree.

These points may be stated as follows: 1. That, while, confessedly, the agreement of option contains no language even remotely indicating that the building of the railroad referred to on and over a certain route, or, to state it concretely, over the route from Ukiah to Willits, in preference over other routes which were within the contemplation of the projectors of said road, constituted a consideration moving the plaintiff to grant the option in question to the defendant, yet the averments of the cross-complaint themselves disclose that the building of said road along the indicated route was, in point of fact, the consideration supporting said option, and that further disclosing that said railroad over and along said route was not completed at the time of the exercise by the defendant of his election to purchase the property in dispute in pursuance of said option, the pleading of the defendant, therefore, signally and completely fails to show or set forth a contract for the sale and purchase of the property or a contract whose terms can be specifically enforced. In other words, to state this proposition—the premise and the conclusion therefrom—in the language of learned counsel for the appellant in his oral argument before this court: "The plaintiffs were the owners of a tract of timber land in Mendocino county. The defendant contemplated an extension of the North Pacific Railway, and had under consideration four different routes, one of which ran from Ukiah to Willits. He proposed selecting the line along which he should secure options upon timber lands. With full knowledge of these facts the plaintiff granted him, in consideration of his building on the route from Ukiah to Willits, the right to purchase, at his option, their property within a designated time. When the time was about to expire, the defendant demanded a conveyance. The extension not being built, the plaintiffs refused to convey. That, under these circumstances, the plaintiffs were under no obligation to convey, is a proposition which would seem hardly to require argument. As the building of the road from Ukiah to Willits was the consideration of the right to a conveyance, the road must, of

course, be built, before that right could be exercised. If I promise to give you something in consideration of your doing something, surely you may not ask for the thing I am to give until you have done the thing you are to do." 2. That the offer or option granted by the plaintiffs was never accepted, it appearing from the findings "that the offer was to sell at a certain price, and the proposal to buy at a different price." In other words, the contract made is not the one upon which the defendant relies in this action.

There are other objections aimed at the findings and cross-complaint, among which is the one involving the contention that the option granted by the plaintiffs to the defendant was not supported by any consideration.

If, as before suggested, as to the proposition that the contract declared upon is not the contract made, the findings thus assailed do not support the judgment, then, manifestly, the cross-complaint does not, and never did, state a cause of action, since, as we have seen, the findings so attacked are substantially in the language of that pleading.

Replying to the propositions thus submitted by the appellants, the defendant first contends that the precise question whether the facts alleged in the cross-complaint state a cause of action or are such as to entitle him to the specific performance of the alleged agreement of sale and purchase, was involved in and decided, adversely to the position of the appellants here, on the appeals in the case of these plaintiffs against the defendant, 153 Cal. 735, [15 Ann. Cas. 630, 21 L. R. A., N. S., 800, 96 Pac. 893], and 147 Cal. 249, [81 Pac. 958], and that, therefore, regardless of whether the court was right or wrong in its construction of the scope and effect of the allegations of the cross-complaint and of the findings referred to, the question of the sufficiency of that pleading is now inhumed beneath the doctrine of *res adjudicata,* and that said question is, consequently, so far as this action is concerned, no longer open to review.

It is secondly contended that there is nothing either in the language of the written option, the findings or the allegations of the cross-complaint which furnishes the slightest pretext for the contention that the building of the railroad referred to from Ukiah to Willits or over any other route constituted the consideration or any part thereof inducing the plaintiffs to

grant the option or was intended to operate as a condition precedent to the right of the defendant to exercise the option to purchase the lands, or that indicated a different contract from that upon which the defendant declares. As to the latter proposition, the defendant submits that, the plaintiffs themselves having by their own acts changed the condition of the property during the life of the option so that full performance of the agreement on their part could not be had, the defendant was entitled to part performance thereof or performance of so much of the agreement as it was within the power of the plaintiffs to consummate, with compensation for the deficiency. (Civ. Code, sec. 3386.) In other words, the contention is that the acceptance of the option by the defendant was an acceptance of the original offer, precisely as it was granted, subject, however, to the latter's right to be compensated by the plaintiffs for a deterioration in the value of the lands occasioned by their own unauthorized acts while the option still subsisted.

It may be just as well to announce, *in limine,* that our conclusion is that the attack upon the cross-complaint and the findings, as indicated in the foregoing, is without substantial grounds for its justification.

We shall consider the points urged in the order in which they are stated herein and as if both involved, as the first point certainly does, a direct assault upon the sufficiency of the cross-complaint to state a cause of action.

As seen, the cross-complaint avers the execution of the agreement of option, as set out in the complaint, granting to the defendant the exclusive right, for a period of twelve months, to purchase the property therein described. The pleading then proceeds with the following allegations, which constitute the sole fulcrum of the argument addressed to the proposition that the building of the railroad was intended as and was an act prerequisite to the right of the defendant to a conveyance:

"IV. That in the making of said agreement this defendant was not acting in his own interest and behalf, but for others associated with him, who were to construct the railroad hereinafter mentioned, and as to the interest of said persons, although made and taken solely in the name of this defendant, as party of the second part.

"V. That at the time said agreement and contract was made, this defendant, and the persons so associated with him, were contemplating and preparing for the building of a railroad from some point on the line of the railway of the San Francisco and North Pacific Railway Company into some portion of Mendocino county, in which timber and wood could be procured in large quantities; that at said time four different locations (or routes) for said proposed railroad were under consideration by them, and it had been determined by them to so build said railroad at some one of the said contemplated locations only, but it had not been decided at which one; that one of the said contemplated locations for said proposed railroad was from Ukiah, northerly to Willits in said county; that the building of said railroad at the last-mentioned location would greatly increase the value of the lands hereinbefore described by making the timber thereon accessible to a market; but the building thereof at any one of the other proposed and contemplated locations would not increase the value of these lands; that the selection of a route or location depended largely upon securing options upon timber lands along the line of the proposed railway; that all these facts were well known at the time to plaintiffs, and that the inducements and consideration moving the plaintiffs, and causing them to enter into said contract or agreement was the encouragement and inducement of the building of said railroad from Ukiah to Willits in preference over said other routes.

"VI. That thereupon and thereafter this defendant, and the persons so associated with him, secured the selection of said route and location for said railroad from Ukiah to Willits in preference to said other routes and locations; and said railroad was thereupon surveyed and laid out and is now in process of construction and being rapidly built and pushed toward completion, and will be built from Ukiah to Willits within a short time; and that the consideration and inducement causing preference to be given to said location thereof was the option given in said contract hereinbefore set forth, giving this defendant the privilege of purchasing said land, and similar options in similar contracts regarding other lands adjacent thereto and in that portion of the county, and said options were all taken and said contracts all entered into

solely for the purpose of securing freight for said railroad, and the added valuation that would be given to said lands by the construction of the railroad in excess of the price set in said contracts respectively."

In vain have we prosecuted an examination of the foregoing paragraphs of the cross-complaint to find a single line, or even a word, which may rationally be interpreted to justify the inference that the actual building of the railroad constituted any part of the consideration moving the plaintiffs to grant the option in question to the defendant. Much less do the averments disclose a direct statement indicating the act of actually building the railroad to have been imposed as a condition precedent to the defendant's right to a conveyance. The nearest approach to an allegation justifying the contention of the plaintiffs in that regard is the following: "That all the facts were well known at the time to plaintiffs, and that the inducements and consideration moving the plaintiffs and causing them to enter into said contract or agreement was the *encouragement and inducement of the building of said railroad* from Ukiah to Willits in preference over said other routes." But this allegation, it is plainly apparent, does not say that the defendant *agreed* to build the railroad, in consideration for the option, or that it would complete its construction within any specified time, but merely declares that the plaintiffs, to *encourage* and *induce* the projectors to build the road over said route, were thus moved to enter into the agreement. There is, in fine, nothing in the language of the cross-complaint binding the defendant to do anything with respect to the building and completion of said railroad, or indicating that upon the building and completion of the road rested the right of the defendant to exercise the option to purchase the property.

But we think that this question—the objection to the cross-complaint upon general grounds—has been definitively and conclusively determined by the supreme court in the case of *McCowen v. Pew*, 153 Cal. 735, [15 Ann. Cas. 630, 21 L. R. A., N. S., 800, 96 Pac. 893]—the second appeal in this case.

The question on the sufficiency of the cross-complaint on that appeal arose over the ruling by the trial court by which it sustained an objection by plaintiffs to any evidence being received in support of the averments of that pleading on the

ground that it did not state facts sufficient to constitute a cause of action or defense to the action of plaintiffs.

The sole proposition on which the asserted insufficiency of the cross-complaint was predicated at that trial of the case was, as stated by the supreme court, in its opinion, "that the contract sought under that pleading to be specifically enforced was contrary to public policy and void." That this was the specific ground of attack on the cross-complaint in that case was assumed by the supreme court from the fact only that the briefs and arguments of counsel for the appellants were confined to a discussion of the question whether, as they claimed the cross-complaint revealed to be the fact, "contracts between a land owner and a company for the establishment of the line of road to subserve and promote private and pecuniary advantages of those entering into them are in contravention of such (public) policy and void, because the tendency of all such contracts is to sacrifice the public interest to the selfish private advantage of the contracting parties." In other words, the specific ground upon which it was contended and argued at the hearing of that appeal, on behalf of appellants, that the cross-complaint failed to state a cause of action, was that the allegations of said pleading disclosed that the agreement between the plaintiffs and the defendant was of the nature of one whereby the defendant, acting for the railroad company, agreed with the plaintiffs to preclude said company "from establishing or locating depots or stations on its road at any other than certain localities, or within certain prescribed limits." And this question the court decided in that case, among other things saying that such agreements "are plainly in violation of a clear duty owed by the railroad company to the public, as public agents, to locate their depots and stations where the public wants and necessities demand their establishment," etc.

While it is true that the precise special reason urged in support of the general objection to the cross-complaint at the hearing of that appeal in this case was different from the precise special reason urged in support of the general objection to the pleading here, it is the statement only of an obvious proposition to say that the ultimate question submitted for decision by the court on the former appeal is precisely the same as the ultimate question submitted for determination

here, viz.: Does the cross-complaint state facts sufficient to constitute a cause of action? Nor, if it may be said that, strictly speaking, the court on the former appeal did not expressly pass upon the specific objection here urged in support of the general objection then interposed and argued against the cross-complaint, can it be maintained that the court did not then decide that that pleading was good as against an objection on general grounds for any reason that might be assigned in support of such objection. The objection to the reception of evidence in support of the allegations of the cross-complaint upon the ground that it failed to state a cause of action was, manifestly, tantamount to an objection thereto upon the same ground through the agency of a general demurrer. It often happens that more than a single reason may be assigned and urged in support of the general objection, in whatsoever form the objection may be raised, that a pleading is bad for paucity of facts. Indeed, the case at bar is a striking illustration of this proposition. And, where a pleading is challenged for want of sufficient facts, in whatever form such attack may be garbed, we apprehend it to be the duty of a court of review, and a duty that it will in all cases execute, in the examination of such objection, to take such pleading up by the four corners, thus scrutinize and measure its averments by the full breadth of the objection thus interposed to it, and then decide whether, for the reason or reasons advanced, or for other reasons, not advanced, the general objection that the pleading fails to state a cause of action is well taken. If this were not true, a piece-meal method of attacking a pleading for insufficiency of facts would obtain—a practice which the law does not countenance and which the courts, for the sake of putting an end to litigation, should not encourage. Therefore, we affirm that the supreme court, having sent the cause back for retrial after a decision against the objection that the cross-complaint here was bad for want of facts, has impliedly, if not expressly, held that the specific objection here urged against said pleading is groundless.

But we think that it cannot for a moment be doubted that, in its opinion in 153 Cal. 735, [15 Ann. Cas. 630, 21 L. R. A., N. S., 800, 96 Pac. 893], in this case, the court has passed upon and sustained the ability of the cross-complaint to withstand the specific attack made upon it here.

In order to determine the question whether the specific point urged in support of the objection made to the cross-complaint on the second appeal (153 Cal. 735, [15 Ann. Cas. 630, 21 L. R. A., N. S., 800, 96 Pac. 893]), on the ground that it set forth no cause of action, viz., that its averments disclosed an illegal and, therefore, void agreement as the basis of the relief asked for therein, the supreme court was, in the very nature of the proposition before it, compelled to examine the allegations of said pleading to satisfy itself upon the proposition whether the agreement between the plaintiffs and the defendant came within that class of agreements unlawful and void because in contravention of public policy. In the prosecution of this inquiry, the first proposition that would naturally be examined and solved was whether the cross-complaint, in point of fact, disclosed an agreement of any character whatsoever requiring the railroad to be built before the defendant would become entitled to a conveyance. And the court decided this question in the very beginning, holding, in as clear and explicit language as could well be employed, that the averments of the cross-complaint did not show that the plaintiffs were moved in granting the option by the consideration or promise that the defendant, before being entitled to accept such option, would build the railroad over the line from Ukiah to Willits, or that the defendant bound himself to do anything with regard to the location of the route or the building of the railroad. After stating the proposition upon which the appellants based their contention that the cross-complaint was insufficient to entitle the defendant to the relief demanded by his pleading, and saying that "the only question necessary for consideration is the refusal of the trial court to permit the introduction of any evidence by appellant in support of his cross-complaint," the court, *inter alia,* said:

"We make no question about the rule as contended for by the respondents, but we are satisfied, taking the allegations of the cross-complaint with the other pleadings in the case, which must be considered for that purpose (although it was on the allegations of the cross-complaint alone that the point of invalidity was based) that it does not appear therefrom that in the granting of the option any restriction or limitation was imposed thereby on Pew and his associates, who contemplated building the railroad, as to the selection of a route. . . . As to

the allegations concerning the consideration and inducement to the granting of the option, it is quite apparent that they were made by the cross-complaint as a foundation for a claim for special damages for the cutting of the timber during the life of the option, *and for no other purpose* (*McCowen* v. *Pew*, 147 Cal. 299, [81 Pac. 958]), while the answer to the cross-complaint denies that any such consideration entered at all. . . . The agreement itself granting the option . . . provides for an option in favor of respondent Pew to purchase the eleven hundred and sixty acres of timber land at $15 an acre, and recites that the owners [McCowens] 'desired to dispose of same and to have the assistance of said party of the second part [Pew] in so doing without cost to the parties of the first part,' and declares the consideration for the option to be 'for value received, . . . and to induce said party of the second part to undertake the disposition of said land.' On the part of Pew he stipulated 'to use his best endeavors to dispose of said property, either by acquiring same or selling same to others' without cost to the McCowens. These are the only provisions of the contract of option itself. There is nothing therein relative to any conditions or stipulations or restrictions as to any route for a contemplated railroad, nor mention made of any railroad at all. Neither, when we come to an examination of the allegations of the cross-complaint, do we find anything *from which it appears that any agreement was made that in consideration of the granting of the option the selection of any particular route was provided for.* [Italics ours.] . . . It will be observed that there is nowhere in these allegations any statement that Pew and his associates agreed to select any particular route to the exclusion of any other route, *nor, in fact, so far as said allegations are concerned, does it appear therefrom that they undertook to do anything.* [Italics ours.] . . . All that appears is that Pew and his associates, for the purpose of securing freight for the railroad they contemplated building, took options upon timber lands in the locality through which the line of said road might be built and such freight received; that certain owners of land, as an *inducement to the building of the railroad over one of the four contemplated routes,* gave an option upon their lands at a price specified in the option representing the full value of the land and that the only advantage to be secured to the builders

of the road (as full value for the land was to be paid) was
the obtaining of freight to be carried. . . . In the absence of
anything to the contrary in the allegations of the cross-com-
plaint, it must be taken that Pew and his associates were per-
sons contemplating the formation of a railroad corporation,
and that the options obtained by Pew were for the benefit of
such corporation, and that any inducements operating upon
the granting of such options must be taken to have extended
to the contemplated railroad itself.''

Thus we have quoted *in extenso* from the opinion of the
supreme court to show, as the opinion clearly does show, that
the very question involved in the present discussion was de-
cided in said opinion by that court, viz., whether the cross-
complaint discloses that the consideration or a part of the
consideration moving the plaintiffs to grant the option in
question to the defendant was a promise or agreement on the
part of the latter to secure the location of the route or the
building of the railroad from Ukiah to Willits.   Disregarding,
if we may choose to do so, all the other language of the opinion
but the following, and we find the proposition succinctly and
conclusively decided: ''As to the allegations concerning the
consideration and inducement to the granting of the option, it
is quite apparent that *they were made by the cross-complainant
as a foundation for a claim for special damages for the cutting
of the timber during the life of the option, and for no other
purpose,''* and that ''it will be observed that there is nowhere
in these allegations any statement that Pew and his associates
agreed to select any particular route to the exclusion of any
other route, *nor, in fact, as far as said allegations are con-
cerned, does it appear that they undertook to do anything.''*

If, by the foregoing, the court does not expressly decide that
the specific objection here made to the cross-complaint is with-
out merit, then we confess our inability to understand the
above language or the import of the decision.

Our conclusion upon the point under consideration is, as
must be apparent from what we have said: 1. That nowhere
in the cross-complaint is there a single statement or averment
which may be held to disclose an agreement that the road
should first be built before the defendant's right to a convey-
ance ripened.   There is even not shown, as the supreme court
declares, an agreement to locate the road over the route from

Ukiah to Willits, much less an agreement that the road should be built before the defendant would be authorized to exercise his option. 2. That, assuming that our conclusion as thus stated is erroneous, the decision of the supreme court to which we have referred, holding the .objection to the cross-complaint on the general ground that it does not state a cause of action not to be good involves the law of the case upon that question and is conclusive as to the parties to this action. And since the findings upon this point follow the averments of the complaint, it therefore follows that the court did not, as is the contention, find that the building of the railroad constituted a prerequisite to the right of the defendant to a conveyance.

What we have said with regard to the law of the case, applies with equal pertinency and force to the second point advanced by the appellants.

The proposition is, as we have seen, that the findings disclose a variance, fatal to the judgment, between the option granted by the plaintiffs and the acceptance by the defendant. The finding in this particular, as we have heretofore shown, substantially follows the averments of the cross-complaint. As before suggested, if that finding does not support the judgment for the reason stated, then clearly the cross-complaint has at no time stated a cause of action. The point thus made is, therefore, in effect an attack upon the sufficiency of the cross-complaint to state a cause of action. Although it is strictly correct to say that this precise point was not raised or considered on the second appeal of this case (153 Cal. 735, [15 Ann. Cas. 630, 21 L. R. A., N. S., 800, 96 Pac. 893]), yet we adhere to what we have already said regarding the effect of that decision upon the question of the sufficiency of the cross-complaint, and hold that thereby that pleading was held to be good as against that objection for any reason that might or *could* have been suggested in its support. The court, as before stated, remanded the cause for a *new trial.* Upon what, must we assume? Upon a pleading which, for any reason, stated no cause of action? The questions embrace their own answer. But conceding that there was no implied ruling against the contention of the appellants as to the point now under review in the opinion in the 153 Cal., still there can be left no room for any doubt, after an examination of the opinion in *McCowen* v. *Pew,* 147 Cal. 309, [81 Pac. 958], *supra* (the first appeal in

this case), that this point was presented and argued by counsel and decided by the court adversely to the contention of the appellants here.

The cause, on said appeal, was first heard in department and the judgment and order in favor of the defendant affirmed. In the department opinion it is said: "One of the contentions on the part of the appellants is, as stated by their counsel, 'that the option in this case was merely an offer to sell the property, and that in order to make it a valid contract, capable of specific performance, it was necessary for the defendant Pew, within the time set in the option and before its withdrawal, to accept the offer in the *exact terms in which it was made.* . . . An acceptance of an offer to purchase the property must be unconditional in order to create a contract, and the slightest condition attached to an attempted acceptance of the option prevents an agreement of the parties.' This contention cannot be maintained''; citing *Burks* v. *Davies,* 85 Cal. 110, [20 Am. St. Rep. 213, 24 Pac. 613].

The court in bank reversed the department on one point and so sent the cause back for retrial. The single point upon which the reversal was founded was, as we have before shown, that the trial court erred in its adoption of a basis for the admeasurement of compensation to which the defendant claimed to be entitled because of the removal of the timber from the lands. The question now under consideration was not discussed by the court in its opinion rendered in bank, but it was before the court then as it was before the department. Indeed, it was one of the prominent points urged for a reversal at the hearing of that appeal, and the judgment and order having been reversed on another point, without any reference in the opinion to this point, it must be assumed that the court regarded it as possessing no merit, which is equivalent to saying that the court's decision of the question was against the position here of appellants.

But apart from any consideration of the proposition whether the decisions of the supreme court heretofore rendered in this case constitute the law of the case upon this question, we are persuaded that the position of the appellants, as a legal proposition, is altogether untenable.

As has appeared, the plaintiffs granted to the defendant the option to purchase, within twelve months, the lands in dis-

pute.   During the life of the option, the plaintiffs cut and re-
moved a large quantity of timber from said lands and thus,
by their own acts, changed the condition of the property from
that in which they agreed to permit the defendant to buy it,
if he so elected within the time granted to him.   Within that
time, the defendant did elect to exercise his right to purchase
the property, according to the terms of the option, and in writ-
ing so notified the plaintiffs, but, having been informed of the
destruction and removal of a large quantity of timber from
said lands after the granting of said option, he demanded of
the latter compensation therefor commensurate with the de-
preciation in value that the property had necessarily suf-
fered thereby.   The plaintiffs, as we have seen, acquiesced in
the acceptance as it was thus made by the defendant.   In
other words, as the court found, the "plaintiffs made no ob-
jection to the notice of acceptance of option, as so given by
defendant, or to his offer to perform on his part, and that they
had opportunity so to do if any objections they had; and they
did forthwith assent and agree to the same and to all proposi-
tions made by defendant in said writing."   And thus the
plaintiffs distinctly recognized the acceptance thus made by
the defendant as an acceptance of the identical option which
they had granted to him.   And, obviously, such acceptance
*was* of the precise offer by the plaintiffs.   The option provided
that the plaintiffs would grant the defendant the right to pur-
chase, within twelve months, eleven hundred and sixty acres
of land, specifically described in said offer, at the rate of $15
per acre, and the acceptance declared that the defendant would
accept the offer and purchase said *eleven hundred and sixty
acres, so described, at the rate of $15 per acre.*   Up to this
point, it would and could not be doubted that a court of
equity would compel specific performance on the part of either
of the parties to this contract.   But it transpires that the
plaintiffs—the owners of the lands and the optioners—through
their own deliberate and unauthorized acts, find themselves
unable to perform their agreement in full.   By their own
acts during the life of the option they have lessened the value
of the lands which they agreed to allow the defendant to buy
at a specified price.   Willing for and desirous of a perform-
ance of so much of the agreement as the optioners were able
to carry out, the optionee added to his acceptance: "You have

despoiled the property which you granted me the option to purchase of some of its valuable timber, which was my chief inducement to the securing of said option, and thus have you reduced the value of the lands. Now, I think it is only just and right that, having elected to buy the property on the stipulated terms, I should be compensated for the value of that timber," to which proposition the plaintiffs assented, and thus, it is argued, a conditional contract or a new agreement, entirely independent of and distinct from the proposition involved in the original negotiations has been introduced and is relied upon by the defendant. Obviously, the inevitable result of this contention, if sustained, would be, to employ an illustration: That A may agree to grant to B an option to buy his house and lot at a specified price within a specified time. A may get rid of the obligation thus imposed upon himself, or, as might in effect strictly be true, arbitrarily rescind or withdraw the option by wrongfully removing the house from the lot during the life of such option and before it had been accepted.

The proposition as thus stated and contended for cannot be upheld. B, it is very true, might justify a refusal on his part, after acceptance, if he accepted the option with no knowledge of the changed condition of the property through the optioner's own fraud, to take the property; but the optioner certainly could not, upon any equitable consideration, refuse to convey upon acceptance by the optionee, with just and proper compensation to the latter for the part of the agreement which he was thus made unable to perform.

In other words, the case here comes clearly within the rule of part performance with compensation for the deficiency as enunciated by section 3386 of the Civil Code, *supra*, which reads: "Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compelled specifically to perform, everything to which the former is entitled under the same obligation, either completely or *nearly so, together with full compensation for any want of entire performance.*"

The rule is thus stated by Professor Pomeroy, in his work on Equity Jurisprudence, volume 6, section 831: "Where the vendor is unable even substantially to perform his contract, the vendee, at his election, may have specific performance with

18 Cal. App.—21

compensation for the deficiency, on the principle that 'where one party would be foiled at law, but the other may have the reasonable, substantial effect of his contract, compensation shall be admitted.' ''

The cases cited by appellants—notably, *Clarke* v. *Burr,* 85 Wis. 649, [55 N. W. 401], and *Caldwell* v. *Frazier,* 65 Kan. 24, [68 Pac. 1076]—deal with a widely different state of facts from that in the case at bar, and are, therefore, not in point here.

In the first-mentioned case, Clarke granted to Burr an option to purchase a certain piece of land, upon which a sawmill stood. At the time the option was given, the sawmill was insured for $9,500. The mill was destroyed by fire during the life of the option and thereafter Burr, within the time designated by the option, notified Clarke of his acceptance of the offer to sell, but demanded that the insurance money be credited to him as a part of the purchase price—that is, that he (Burr) was ready to buy the property for a price amounting to the difference between the sum originally agreed upon and the amount of the insurance on the mill. The court held that the "acceptance"' by Burr was not an unconditional acceptance, and therefore constituted the proposal of a different contract from that contemplated by the option, and refused to decree specific performance of the alleged contract.

The case of *Caldwell* v. *Frazier,* 65 Kan. 24, [68 Pac. 1076], is quite similar as to the essential facts upon which the decision of the controversy hinged to the case of *Clarke* v. *Burr,* 85 Wis. 649, [55 N. W. 401].

There are several conclusive answers to the contention, pressed with vigor, that these cases are applicable to the case at bar. First, it is to be observed, as we have shown, that there was here no conditional acceptance of the offer. The defendant, in other words, did not accept the offer upon the condition that the price stipulated in the option be reduced, but accepted the offer for the precise price at which the plaintiffs therein offered to sell the lands. The demand for an allowance for the inability of plaintiffs to fully complete the contract to convey arising upon the acceptance of the offer was not, manifestly, a proposition to reduce the *price* for which they offered the lands, but for *compensation* for the loss which would accrue to the defendant because it became

impossible for plaintiffs to convey to the defendant all that they had offered to convey for the stipulated price. Secondly, the plaintiffs expressly acquiesced in the acceptance, and treated and recognized said acceptance as of the precise option which they had granted to the defendant, and thus they waived any objection to the acceptance upon the ground that it varied from the terms of the option. (Civ. Code, sec. 1501; Code Civ. Proc., sec. 2076; *Oakland Bank of Sav.* v. *Applegarth,* 67 Cal. 86, 88, [7 Pac. 139, 476] ; *In re Pearsons,* 102 Cal. 569, [36 Pac. 934] ; *Royal* v. *Dennison,* 109 Cal. 558, [42 Pac. 39] ; *Kofoed* v. *Gordon,* 122 Cal. 314, [54 Pac. 1115] ; *Lattimer* v. *Capay Valley L. Co.,* 137 Cal. 286, [70 Pac. 82].) Thirdly, and, indeed, the most important of the considerations distinctly differentiating this case from those cited and referred to, the changed condition of the property, as we have seen, was due entirely and solely to the deliberate and unauthorized acts of the plaintiffs themselves during the life of the option, and it is a familiar principle that no one will be permitted to take advantage of his own wrong. As is shown by the illustration above employed, a party will not be permitted arbitrarily, or at his own will, or by his own acts, or without the consent of the other party thereto, to render his contract nugatory. An option agreement, although in its nature unilateral, is as binding upon the part of the optioner as is a bilateral agreement upon the parties thereto. So long as it is supported by a consideration, the optioner can no more capriciously withdraw or rescind it than one of the parties could arbitrarily or without the consent of the other party rescind a bilateral contract.

And this brings us to a consideration of the only one of the several remaining points to which we feel called upon to give special attention in this opinion, viz.: That the option was not supported by a consideration. The obvious answer to this proposition is that the option as an *option agreement* became *functus officio* at the moment of its acceptance by the defendant. After that event, in other words, it was eliminated from the transaction as an *option,* and could then serve no purpose except in so far as it disclosed and involved the terms of the bilateral agreement arising, *ipso facto,* upon its acceptance, and, therefore, whether it was supported by a consideration is now immaterial. If, as a matter of fact, it was unsup-

ported by a consideration (although the court found to the contrary), it was, of course, then a mere *nudum pactum,* and the plaintiffs could, therefore, have withdrawn it at any time before its acceptance. (*Brown* v. *San Francisco Sav. Union,* 134 Cal. 448, 452, [66 Pac. 592], and cases therein cited; *Mitchell* v. *Gray,* 8 Cal. App. 423, 429, [97 Pac. 160].) But, while this is true, the plaintiffs not having withdrawn it but, on the contrary, treated it as a binding obligation by acquiescing in its acceptance, it was good without a consideration until so withdrawn.

We have now examined the record before us and the points pressed upon us for a reversal with much care and have thus found no reason which would warrant us in disturbing the judgment.

The defendant having appealed from that portion of the judgment allowing the plaintiff's interest on the amount adjudged to be due them for the property in dispute, which said appeal, No. 882, is pending in this court, the judgment appealed from in the case at bar, except that portion relating to such interest, and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 20, 1912.